[Crim. No. 1794.   Third Dist.   Apr. 21, 1942.]

THE PEOPLE, Respondent, v. ROBERT E. DESCANT, JR., Appellant.

George I. Lewis for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THOMPSON, Acting P. J.—The defendant was charged and convicted in Sacramento County with drawing, uttering and delivering to Louis Block a check for the sum of $35.28, upon the First National Bank of Merced, in which bank the defendant then had no funds or credit, with the intent to defraud the said Louis Block, contrary to the provisions of section 476a of the Penal Code.

The defendant contends that the Sacramento court was without jurisdiction to try the cause; that the court erred in reopening the case and receiving in evidence the testimony of an officer with respect to the identity of several other fictitious checks which were drawn and uttered by the defendant; that the court erred in receiving in evidence photographs of the payee who passed the checks to Louis Block; that the court erred in permitting the jury to take to their jury room the exhibits which were received in evidence, and that the court erred in giving to the jury an instruction regarding the methods of impeaching witnesses.

The evidence satisfactorily shows that the defendant and E. R. Bartlett, the payee named in the check which was passed to Louis Block, co-operated in fraudulently issuing and passing numerous similar fictitious checks at about the same time, with the purpose of defrauding different merchants. Both men were arrested. The defendant was separately charged with this offense. Neither of them took the witness stand at the trial of this case.

On May 19, 1941, the defendant, as manager of the so-

called Pacific West Coast Company, opened an account in the First National Bank of Merced, by depositing therein the sum of $117. That fund was exhausted, and the account was finally closed August 15, 1941. No deposit was thereafter made in that account, nor did the defendant negotiate for further credit with the bank. Upon opening his account the defendant was furnished a pad of blank checks, upon each of which there was printed his business card. The checks were consecutively numbered. On September 20, 1941, more than a month after his account had been closed, the defendant drew upon the Merced bank, in his own handwriting, and signed, six different checks, each for the sum of $35.28, which bore the same date and were made payable to E. R. Bartlett. Each check was endorsed by Bartlett and fraudulently passed to different merchants in Sacramento, in payment for goods which he purchased. A portion of the checks were paid to Bartlett in cash. One of these checks, numbered 204, was delivered to Louis Block, the manager of the Dundee Clothing Store in Sacramento, on September 26, 1941, in payment for an overcoat. He also received $10 in cash from that check. The defendant was not then present. This last mentioned check was deposited for collection in the Capital National Bank of Sacramento, on September 29, 1941, and promptly forwarded to the Merced bank for payment. The Merced bank refused payment of the check and returned it with the endorsement stamped thereon, "Account Closed." The other checks, which were exactly like the last mentioned one in date and amount and in every other respect except their serial numbers, were likewise passed by Bartlett to other merchants in Sacramento from whom he purchased goods on or about the same date. They were deposited for collection and forwarded to the Merced bank for payment. Payment on each check was refused, and they were returned with the same endorsement, that the account was closed. Several of these merchants took the witness stand and testified to the respective transactions.

After the arrest of the defendant there was found in his possession the unused portion of the pad of blank checks with stubs corresponding to the previously mentioned checks, and eight other checks which had been filled out and signed by the defendant, for the sum of $20 and $25. These checks were also dated September 20, 1941. The name of the payee was left blank in these eight checks. It was evidently the

purpose of the defendant also to fraudulently pass these checks.

The six fictitious checks which were passed to different merchants aggregated the sum of $211.68, which is nearly twice the amount of the entire deposit in the Merced bank. The eight checks which had not been passed aggregated the sum of $180. The similarity of dates, amounts, name of payee of all the negotiated checks, the fact that they were passed by the same man to different merchants in Sacramento on or about the same date in similar transactions furnishes satisfactory evidence of a concerted plan between the defendant and Bartlett to fraudulently procure from various merchants money and goods by means of circulating these fictitious checks.

The judgment is adequately supported by the evidence. To identify the man who passed the check numbered 204, which is the one involved in this action, Mr. Block was asked if the defendant, who sat in the coutroom, was the man. He looked at him, and said "No." He was then shown a card upon which there appeared two bust-photographs of Bartlett in different profiles, across the chest of one of which there appeared a number containing several figures, in the manner in which the pictures of convicts are usually identified. He promptly identified the photographs as pictures of the man who passed the fictitious check to him. An officer afterwards testified that the defendant admitted those photographs were pictures of Bartlett to whom he drew and delivered the six checks. The photographs were received in evidence without objection. Later defendant's attorney objected to them, but failed to assign the reason that one of them was prejudicial because it contained a prison number.

The defendant's motions for a directed verdict, for a new trial, and for an arrest of judgment on the ground that the Sacramento court lacked jurisdiction to try the cause, because the checks were asserted to have been drawn in Merced and payable at a bank situated in Merced county, were properly denied. The Sacramento court had jurisdiction of this offense. The venue was properly laid in Sacramento county. The gist of the offense was the uttering or passing of the check in question "with intent to defraud," not the bank, but the merchant to whom the fictitious check was delivered in pretended payment for the overcoat and the ten dollars in change. Section 476a provides for separate offenses of "drawing," or

"uttering," or "delivering" a check upon a bank where the maker has insufficient funds with which to pay it, with the intent to defraud another person. ∘Webster's New International Dictionary, at page 2809, defines the word "utter" as it is here used, as "to put in circulation, as money or currency; to cause to pass in trade." The same authority defines the word "utterance" as "putting in circulation, as false coin or forged notes." In the present case the evidence satisfactorily shows that the defendant uttered or passed the fictitious check in question to Louis Block in Sacramento, through the agency of his accessory, E. R. Bartlett, with the intent to defraud the merchant to whom it was delivered. It is true that the defendant was not present when the check was passed. But it was not necessary that the defendant should be actually present when the crime was consummated, provided he was "concerned in its commission," to render him guilty thereof as a principal. (§ 971, Pen. Code.) The evidence in this case certainly shows, without a doubt, that the defendant was concerned in defrauding the several merchants in Sacramento to whom the fictitious checks were passed as genuine. Nor was it necessary that the participants in that crime should be charged and tried for the offense of criminal conspiracy.

Since the defendant was guilty of the offense of uttering a fictitious check in Sacramento county, through the agency of Bartlett, although the defendant was not then present, the jurisdiction of the crime was located in Sacramento county, where the case was properly tried. (§ 792, Pen. Code.) The section last cited provides in that regard:

"The jurisdiction of a criminal action against a principal in the commission of a public offense, when such principal is not present at the commission of the principal offense, is in the same county it would be under this code if he were so present and aiding and abetting therein."

The defendant was not prejudiced by the reopening of the cause after the prosecution announced that its evidence was closed, for the purpose of permitting an officer to identify certain checks which were relied upon to show the purpose or intent with which the particular one which is involved in this case was uttered and passed. The granting or denial of a motion to reopen a case for further evidence after a party has rested, is within the sound discretion of the trial judge. There was no abuse of discretion in the present case. (§ 1094 Pen. Code; *People* v. *Berryman,* 6 Cal. (2d) 331, 338 [57 P. (2d)

136] ; 8 Cal. Jur. 239, § 307.) All of those checks had been previously referred to by the prosecution in the course of the trial, and witnesses had been examined in regard to them. The defendant was advised from the outset that the prosecution relied upon the uttering and passing of other similar fictitious checks at about the same time to establish the purpose and intent with which the particular check which is involved in this case was passed to the merchant. The defendant was not taken by surprise. He called no witness in his own behalf. Evidently he did not intend to do so. He submitted his case upon the testimony adduced by the prosecution.

The court did not err in receiving in evidence the photographs of the accessory, Bartlett, appearing on a card. They were received without objection. When the defendant did later object to them, he failed to object on the ground that one of them was prejudicial because it contained the impression of a prison number across the chest. That objection was waived by failure to call the court's attention to it.

The court did not err in permitting the jurors to take with them to the juryroom the checks which were received in evidence. One of the jurors requested that they be permitted to take the exhibits with them to the juryroom. It is ordinarily not erroneous to permit jurors to take with them to the juryroom exhibits which have been received in evidence. There appears to have been no abuse of discretion in that regard in the present case. The jury had a right to examine the various checks to determine whether they were all in the same handwriting of the defendant, whether they bore the same date, and whether they contained other evidence from which the purpose and intent of the defendant might be determined. (§ 612, Code Civ. Proc.; 24 Cal. Jur. 755, § 36; 114 A. L. R. 1519 note.)

Nor did the court err in giving to the jury an instruction regarding the method of impeaching a witness. The challenged instruction is couched in the language which is usually given to the jury regarding that subject in appropriate cases. It contained the usual clause that a witness might be deemed to have been impeached by evidence that he had been previously convicted of a felony. (§ 2051, Code Civ. Proc.) There was no evidence that any witness in the case had been convicted of a felony. That instruction was harmless. It could not prejudice the defendant, for he produced no witnesses at the trial to whom it might apply.

Clearly there was no miscarriage of justice in the conviction of the defendant.

The judgment and the order are affirmed.

Tuttle, J., concurred.