[Crim. No. 11709. First Dist., Div. One. Mar. 13, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM MARK MITTEN, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James and Edward P. O'Brien, Assistant Attorneys General, and Derald E. Granberg, Deputy Attorney General, for Plaintiff and Appellant.

William R. Higham, Public Defender, Charles H. James, Assistant Public Defender, and Charles P. Kuntz, Deputy Public Defender, for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Mitten was charged in the Contra Costa County Superior Court with the crime of being an accessory, as defined and proscribed by Penal Code section 32. Specifically he was charged as an accessory to two crimes of murder, the details of which we shall presently discuss.

Penal Code section 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

In the superior court Mitten moved, under Penal Code section 995, to set aside the information on the ground that the venue of the action should have been laid in Mendocino County. The motion was granted for that reason, and the information was dismissed. The People have appealed from the "order dismissing the information."

At Mitten's preliminary hearing the magistrate must be deemed to have concluded from the evidence that the proper venue for the prosecution lay in Contra Costa County. (Venue is a question of fact; see *People v. Pollock*, 26 Cal.App.2d 602, 604 [80 P.2d 106]; Witkin, Cal. Criminal Procedure (1963) Jurisdiction and Venue, § 66.) In conducting the hearing he was required to pass upon the weight of the evidence and the credibility of witnesses. On the subsequent consideration of the record by the superior court, that court was not permitted to substitute its judgment for that of the magistrate. (*People v. Urfer*, 274 Cal.App.2d 307, 310 [79 Cal. Rptr. 60].) Where there is some evidence to support the magistrate's de-

cision neither the superior court, nor this court, is permitted to inquire into its sufficiency. (*People* v. *Block,* 6 Cal.3d 239, 245 [103 Cal.Rptr. 281, 499 P.2d 961]; *Frazzini* v. *Superior Court,* 7 Cal.App.3d 1005-1015 [87 Cal.Rptr. 32].)

From the evidence adduced at the preliminary hearing, and from reasonable inferences which could have been and presumably were drawn from it, the following factual context appears.

A group of men calling themselves "Hell's Angels" killed two persons, apparently by strangling, in Contra Costa County. One of the group telephoned to Ralph Barger of Alameda County, who had not been present at the killings, and who was apparently in some sort of command. Barger was told that they had a problem and that they wanted to come over and talk to him.

One George Wethern owned a ranch in Mendocino County near Ukiah, half of the purchase price of which had been put up by defendant Mitten. The property had once been used as a burial ground for a homicide victim by Barger who had gotten a key to its gate from Wethern. On Sunday, two days after the double homicide, Mitten drove to the ranch where he told Wethern that Barger wanted Wethern to telephone him. The two then drove to Ukiah where Wethern telephoned Barger; they then drove back to the ranch. Wethern and Mitten talked about where to place the bodies and looked around for a burial site. They decided upon an unused well on the ranch, and they discussed the time of the burial which was to be that night, or the next night. Wethern gave Mitten the key to the ranch's gate and told him to do things right and to first remove the dead persons' clothing.

Meanwhile the bodies had been placed in the trunk of someone's white Cadillac in Contra Consta County. With two Hell's Angels in the Cadillac and several more following in a station wagon, the trip to Mendocino County started. The men were equipped with picks and shovels. Soon after leaving the freeway at Ukiah the party joined defendant Mitten who was parked alongside the road in a pickup truck. They followed him to Wethern's ranch where Mitten unlocked the gate. The dead bodies were then removed from the Cadillac and the clothing from the bodies. When the victims were thrown into the well several of the group filled it up while Mitten and another stood guard. Mitten was armed, as also was his companion who had a submachine gun. Lime was placed on the bodies and the well was filled with dirt. When the job was finished Mitten stayed behind while the others went back to Contra Costa County. Mitten then returned the key to Wethern.

Throughout the entire affair defendant Mitten was physically present in Mendocino County. Some of the other members of the burial group were also not parties to the homicides. The chieftain, Barger, was not in attendance at the Mendocino County rites.

■ It should be pointed out that in California one who is an accessory to a felony thereby commits a crime which is separate and distinct from the felony itself.

The difference is sometimes overlooked. There often seems a tendency to consider the accessory as responsible in some manner for the initial felony. The erroneous concept, no doubt, springs from the common law classifications of "accessory before the fact" and "accessory after the fact." Each was considered as some kind of party to the principal crime. (See generally 22 C.J.S., Criminal Law, § § 90, 95.) The acts of the "accessory after the fact" (otherwise equivalent to those of California's "accessory," Pen. Code, § 32) and the principal offense were held to constitute one continuous criminal transaction. (See *Skelly* v. *United States,* 76 F.2d 483, 487-488 [cert. den., 295 U.S. 757 (79 L.Ed. 1699, 55 S.Ct. 914)].) The common law distinction is now wholly abrogated in California. One who would have been an "accessory before the fact" is now a principal to the offense. (See Pen. Code, § § 31, 792, 971; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 186 [281 P.2d 250]; *People* v. *Belenger,* 222 Cal.App.2d 159, 167 [34 Cal.Rptr. 918].) And, as we have stated, one who would formerly have been an "accessory after the fact" is now guilty as an accessory, a crime separate and distinct from the principal offense. (See Pen. Code, § § 32, 33, 791, 972; *People* v. *Wallace,* 78 Cal.App.2d 726, 746-748 [178 P.2d 771]; *People* v. *Huling,* 71 Cal.App. 144, 148-149 [234 P. 924].)

This distinction is pointed up by Penal Code section 791 which makes it clear that the superior court's territorial jurisdiction over an accessory offense is in no way affected by the situs of the principal crime. Section 791 states: "In the case of an accessory, as defined in Section 32, in the commission of a public offense, the jurisdiction is in any competent court within the jurisdictional territory of which the offense of the accessory was committed, notwithstanding the principal offense was committed in another jurisdictional territory."

In the superior court Mitten's contention was, as it is here, that *his* "accessorial acts" occurred only in Mendocino County, which under section 791 had exclusive jurisdiction over any offense that *he* may have committed. He, in effect, argues that jurisdiction over the several accessories must be

split up according to the counties from which they made their respective contributions to the secretive burial ceremonies. He, it follows, must be tried in Mendocino County, while Alameda County from which Barger issued his telephone commands would be the county of that accessory's jurisdiction. And then, of course, those who travelled with the bodies from Contra Costa County, through Marin and Sonoma Counties, to the grave site in Mendocino County might properly be tried in any one of those four territorial jurisdictions.

The argument is patently unsound. Section 791 does not purport to so split up territorial jurisdiction over one "accessory" offense committed by several participants.

■ Here the several accessories, acting in concert, were engaged in a single criminal objective, the clandestine disposal of evidence, in order that the principals to the homicide might "avoid or escape from arrest, trial, conviction or punishment." (See Pen. Code, § 32.) Their offense, as accessories, was committed in part in Contra Costa County, in part in Mendocino County, and in part in other counties.

Penal Code section 781 provides: "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

Section 781 was enacted for the purpose of forestalling technical rules previously relating to intercounty venue in multiple element offenses. (*People* v. *Gonzalez,* 180 Cal.App.2d 285, 288 [4 Cal.Rptr. 822]; *People* v. *Waid,* 127 Cal.App.2d 614, 617 [274 P.2d 217].) It is to be read as complementing other statutes relating to territorial jurisdiction, such as section 791 upon which Mitten relies, to the end that all participants in single crimes committed in several counties may be tried in any one of those jurisdictions. (See *People* v. *Powell,* 67 Cal.2d 32, 62-63 [59 Cal. Rptr. 817, 429 P.2d 137]; *People* v. *Abbott,* 47 Cal.2d 362, 370 [303 P.2d 730].)

The crime in which Mitten participated was committed in part in the "jurisdictional territory" of Contra Costa County. That county, under section 781, had jurisdiction over the offense and all who participated in it. (See also *People* v. *Powell, supra,* 67 Cal.2d 32, 62-63; *People* v. *Abbott, supra,* 47 Cal.2d 362, 369-370; *People* v. *Malloy,* 199 Cal.App.2d 219, 225 [18 Cal.Rptr. 545] [overruled on other grounds, *People* v. *Kelley,*

66 Cal.2d 232, 244 (57 Cal.Rptr. 363, 424 P.2d 947)]; *People* v. *Gonzalez,* 180 Cal.App.2d 285, 288 [4 Cal.Rptr. 822]; *People* v. *Waid, supra,* 127 Cal.App.2d 614, 617; Witkin, Cal. Criminal Procedure (1963) § 69.)

It is of no consequence that Mitten was not personally present in Contra Costa County during the time that the crime of accessory was being committed in that county. Penal Code section 792 provides: "The jurisdiction of a criminal action against a principal in the commission of a public offense, when such principal is not present at the commission of the offense is in the same court it would be under this code if he were so present and aiding and abetting therein." (And see *People* v. *Benenato,* 77 Cal.App.2d 350, 364-365 [175 P.2d 296] [disapproved on unrelated ground, *In re Wright,* 65 Cal.2d 650, 654-655, fn. 3 (56 Cal.Rptr. 110, 422 P.2d 998)]; *People* v. *Descant,* 51 Cal.App.2d 343, 347-348 [124 P.2d 864]; *People* v. *Megladdery,* 40 Cal.App.2d 748, 780 [106 P.2d 84]; *People* v. *Menne,* 4 Cal.App.2d 91, 105 [41 P.2d 383].)

Mitten's argument that the Contra Costa County proceedings were calculated to deny him " 'the inestimable Privilege' of being tried in the vicinage" as reflected "in many pre-revolutionary documents and in the Constitution" is, we think, more properly addressed to the Legislature. ▪ Penal Code section 781, permitting trial in any of the several counties in which a single crime is perpetrated is an expression of the state's policy. We find the statute to be a reasonable accommodation of the state's problem of crimes with multiple jurisdictional territories and defendants, to the Sixth and Fourteenth Amendments' requirement of trial "by an impartial jury of the State and district."

Although it is not essential to our conclusion, we consider also Mitten's argument that there is no evidence "whatever to connect Mitten with the activities in Contra Costa County." If he speaks of the two homicides the point is wholly irrelevant to the issue before us. If he means his accomplices' procession through Contra Costa County with the bodies, the argument is unsupported by the record. It was Mitten who told Wethern that the headman Barger wanted to talk to him, and it was he who waited by the roadside to lead the party to the burial ground. From this the obvious inference follows that Mitten had previously participated with his Contra Costa County accomplices, by telephone or otherwise, in the planning of the crime.

For the reasons we have stated the order dismissing the Contra Costa County information, as it relates to Mitten, must be reversed.

Reversed.

Molinari, P. J., and Sims, J., concurred.