[Crim. No. 8396. Fourth Dist., Div. One. Feb. 16, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
PEDRO VELA PRADO et al., Defendants and Appellants.

## COUNSEL

Raymond A. Caine and Appellate Defenders, Inc., under appointments by the Court of Appeal, and Paul Bell for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler, A. Wells Petersen and Harley D. Mayfield, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STANIFORTH, J.**—Defendant Federico Yanez Gonzalez was charged by information in count one with armed robbery (Pen. Code, § 211), and in count two with being an accessory (Pen. Code, § 32), in that he knowingly harbored, concealed and aided his codefendant Pedro Vela Prado to escape arrest for the armed robbery charged in the first count. Upon trial the court instructed the jury that Gonzalez could be "convicted or acquitted of any or all of the crimes charged." The jury found him guilty on both counts. At sentencing the court dismissed the Penal Code section 32 charge and thereupon committed Gonzalez to the California Youth Authority on the armed robbery charge. Gonzalez appeals from the judgment of conviction.

The jury convicted codefendant Prado of armed robbery in the first degree (Pen. Code, § 211) with the further finding that he was armed with and "did use" a firearm in the commission of the robbery. Prado was sentenced to prison for the term prescribed by law. He appeals from the judgment of conviction contending his forced shackling in the presence of the jury deprived him of a fair trial.

We first consider the Gonzalez appeal. His sole contention is that the jury was improperly instructed. The trial judge charged the jury that Gonzalez could be convicted of either or both armed robbery (Pen. Code, § 211) and as an accessory (Pen. Code, § 32) to a codefendant in the commission of the same armed robbery. It is argued that the result of this misinstruction was an irreconcilable verdict and an implied acquittal of robbery in view of the finding of guilt as to being an accessory to that robbery.

Gonzalez analogizes the juxtaposition of the instant charges to that of theft and receiving stolen property, citing *People* v. *Jaramillo* (1976) 16 Cal.3d 752 [129 Cal.Rptr. 306, 548 P.2d 706]. *Jaramillo,* at page 758, held that a defendant cannot be convicted both as the thief and as the receiver of the proceeds of the same theft. Thus the question is whether the same rationale, the same considerations which compel the mutual exclusivity of the thief and the receiver of his pelf, applies as between the crime principal and his accessory under Penal Code section 32.

The accessory after the fact, defined in Penal Code section 32, commits an offense separate and distinct from the crime of the principal. This is a difference "sometimes overlooked." (*People* v. *Mitten,* 37 Cal.App.3d 879, 883 [112 Cal.Rptr. 713]; *People* v. *Hardin,* 207 Cal.App.2d 336, 341-342 [24 Cal.Rptr. 563]).

The crime of being an accessory after the fact has the following essential elements: (1) someone other than the person charged as an accessory, that is to say, a principal, must have committed a specific completed felony; (2) the accused must have harbored, concealed or aided the principal; (3) with knowledge that the principal committed a felony; and (4) further, the hiding, concealing or harboring must be with the specific intent that the principal may escape from arrest and trial (*People* v. *Hardin, supra,* 207 Cal.App.2d 336, 341; Pen. Code, § 32).

The accessory after the fact must be charged with and prosecuted for an offense not included in the criminal act of the principal. See 1 Wharton's Criminal Law (12th ed.) section 285, page 373, for the rationale of this rule. It is there stated: "The offense of which an accessory after the fact may be guilty is not included in, nor has it any connection with, the principal crime. . . . The one cannot be committed until the principal offense is an accomplished fact. It therefore necessarily follows that in the absence of statute, an accessory after the fact must be indicted and convicted as such, and that a person charged in an indictment as principal cannot be convicted on evidence showing him to be only an accessory after the fact."

Perkins on Criminal Law (2d ed. 1969) at page 667, sets forth, as a black-letter rule, a second prerequisite of an accessory after the fact status: "[T]he accessory himself must not be guilty of that felony as a principal." See LeFavre and Scott, Criminal Law, page 523, to the same effect. In 42 C.J.S., Indictments and Informations, section 149, page 1078, it is stated: "[H]e [the accessory

after the fact] must be indicted as such, and cannot be treated as a principal."

The overwhelming weight of case authority supports the foregoing conclusions of the treatise writers. *State* v. *Sullivan,* 27 N.J.Super. 81 [185 A.2d 410, 415], held:

"An accessory after the fact 'cannot be charged, or punished as the principal offender. . . .'

"The trial court in this case should have instructed the jury that if it found that the defendant was an accessory after the fact, . . . he could not be convicted . . . as a principal . . . of the crime of assault with intent to rob."

To the same effect, see *Crosby* v. *State,* 179 Miss. 149 [175 So. 180], cited with approval on another point in *People* v. *Duty,* 269 Cal.App.2d 97, 104, footnote 5 [74 Cal.Rptr. 606]. (See also *Comm.* v. *Wood,* 11 Gray (77 Mass.) 85, 86; *People* v. *Chadwick,* 7 Utah 134 [25 P. 737, 738]; *State* v. *Key* (Mo.) 411 S.W.2d 100; *Martinez* v. *People,* 166 Colo. 524 [444 P.2d 641, 643]; *State* v. *Townsend,* 201 Kan. 122 [439 P.2d 70, 72]; *People* v. *Galbo,* 218 N.Y. 283 [112 N.E. 1041, 1045, 2 A.L.R. 1220].)

The sole California authority touching upon this question is *People* v. *Wallin,* 32 Cal.2d 803, 806 [197 P.2d 734], which hints at the principle of mutual exclusivity of the crime of the principal and accessory after the fact, stating: "Respondent argues, however, that Mrs. Paz could not be an accessory after the fact to her crime and that therefore she was incapable of committing the offense with which defendant [Wallin] stands charged. It may be that a murderer who acts alone in concealing her crime cannot be separately charged as an accessory, but it does not follow that she cannot become liable as such if she encourages another to aid her in avoiding arrest and punishment."

*Skelly* v. *United States,* 76 F.2d 483, 487-488 [cert. den., 295 U.S. 757 (79 L.Ed. 1699, 55 S.Ct. 914)], expresses a contrary view, holding that the acts of the accessory after the fact and the principal offense constituted a single, continuous criminal transaction. This "erroneous concept" of the nature of the crime of "accessory after the fact" derives from common law sources—the classification of "accessories before the fact" and "accessories after the fact," as a specie of party to the principal crime. These common law distinctions are now wholly abrogated in California

as well as in federal law. *People* v. *Mitten, supra,* 37 Cal.App.3d 879, 883; *Bollenbach* v. *United States,* 326 U.S. 607, 611 [90 L.Ed. 350, 353, 66 S.Ct. 402, 404], in referring to an accessory after the fact, said, "Their offense is distinct . . . ."

■ The foregoing authorities, and right reason, compel a conclusion that when an accused is convicted of violation of Penal Code section 32, which necessarily requires that a *principal* have committed a specific completed felony and that he knowingly aided that principal with intent that the principal escape arrest, he cannot be convicted as a principal in that completed felony. His state of mind—the intent required to be an accessory after the fact—excludes that intent and state of mind required to be a principal. The requisite intent to be a principal in a robbery is to permanently deprive the owner of his property. Thus, this is a totally different and distinct state of mind from that of the accused whose intent is to aid the robber to escape. These are mutually exclusive states of mind and give rise to mutually exclusive offenses. Therefore the trial court erred in giving the challenged instruction.[1]

■ The People, in effect, concede error in the double conviction, but argue that reversal of the greater offense—armed robbery—is not the remedy. They rely on the concurring opinion in *United States* v. *Gaddis* (1976) 424 U.S. 544, 550 [47 L.Ed.2d 222, 229, 96 S.Ct. 1023, 1027]. *Gaddis* held a person convicted of robbery of a bank could not be convicted of receiving the proceeds of that robbery. In language having application by analogy to the principal-an-accessory-after-the-fact context, Justice Stewart directs the trial judge, if satisfied there is sufficient evidence to go to the jury on both counts: " . . . he must . . . instruct the members of the jury that they may not convict the defendant both for robbing a bank and for receiving the proceeds of the robbery. He should instruct them that they must first consider the [charge of robbery and then they should consider the charge of being a receiver] only if they find insufficient proof that the defendant was himself a participant in the robbery."

As basis for its contention that reversal of the robbery conviction is not the necessary remedy, the People cite Justice White's concurring opinion, where he states, at page 551 [47 L.Ed.2d at page 229, 96 S.Ct. at page 1028]: "It may be concluded with satisfactory certainty that the jury,

[1]Exceptional factual circumstances could, of course, give rise to a variant on this rule. Absent facts warranting the exception, the rule of mutual exclusivity should apply (cf., *People* v. *Jaramillo, supra,* 16 Cal.3d 752, 759 fn. 8).

having convicted for both offenses, would have convicted of robbery if it had been properly instructed." The alternative remedy suggested by Justice White is not available here because "satisfactory certainty" does not appear from the facts of this case. From the evidence before the jury, several rational alternative inferences could be drawn: (a) defendant Gonzalez was an aider and abettor under Penal Code section 31, therefore guilty as a principal; or (b) he, knowing that a robbery had been committed by Prado, aided and concealed Prado to avoid arrest by driving him from the robbery scene, thus incurring liability as an accessory after the fact under Penal Code section 32; or (c) he was naught but a bystander, unknowingly rendering a chauffeur service to a robber. There is both direct and circumstantial evidence relevant to each of these alternatives. Essentially the same acts are relied upon to prove Gonzalez' participation in the robbery on the aiding and abetting theory, and to prove he was an accessory after the fact. They tend logically to prove either offense. The state of the evidence as to knowledge of Gonzalez, the nature of his intent, also gives rise to this lack of "satisfactory certainty." We derive Gonzalez' intent from acts and extrinsic circumstances. They are capable of more than one interpretation. To illustrate, an act of flight is attributed to Gonzalez. If he did attempt to flee, is this a consciousness of guilt of robbery or of aiding a known robber to escape? The evidence is not so clear-cut as to authorize a direction to the trial court to dismiss one or the other count. Furthermore, we cannot say, on this state of the evidence, that there is insufficient evidentiary support for either one of these inconsistent convictions. We cannot avoid the corrective action required by *United States* v. *Gaddis, supra,* 424 U.S. 544, and *People* v. *Jaramillo, supra,* 16 Cal.3d 752. Therefore, the judgment should be reversed with directions as to Gonzalez.

### THE PRADO APPEAL

Defendant Prado's sole contention is that the trial court abused its discretion in forcing him to remain shackled in the course of the trial and in front of the jury, thus depriving him of a fair trial. The record reflects that Prado was brought into the presence of the jury wearing leg shackles for a period of at least the first day and the second day during jury selection. The record is not clear as to whether the shackling continued throughout the trial. Defendant's brief indicates that to be the fact. It is not denied by the People. On the second day of jury selection, defendant Prado's counsel moved for a mistrial on the ground his shackling in the presence of the jury constituted a denial of a fair trial, that it prejudiced

defendant in the eyes of the jury. In denying Prado's motion, the trial court said: "You were there when the Court admonished the jury on several occasions that the fact that Mr. Prado was in chains had nothing to do at all with Mr. Prado, had nothing to do with his personality or his condition but it was because we have inadequate facilities and that it was necessary to conduct the trial that he have leg chains on . . . ." The foregoing is the only showing of "evident necessity," if it could be called such, as a basis for the shackling.

■ The rule is that the defendant cannot be subject to physical restraints of any kind in the courtroom while in the jury's presence unless there is a showing of manifest need for such shackling (*Kennedy* v. *Cardwell,* 487 F.2d 101, 102; *People* v. *Duran,* 16 Cal.3d 282, 290-291 [127 Cal.Rptr. 618, 545 P.2d 1322]). The evidence of the nonconforming behavior—those acts which evidence the manifest need—which support the court's determination to impose physical restraints "must appear as a matter of record . . . ." (*People* v. *Duran, supra,* at p. 291.) The *Duran* court said, at page 293: "We next consider whether shackling of the defendant in the case at bar was an abuse of discretion. No reasons for shackling the defendant appear on the record. There is no showing that defendant threatened to escape or behaved violently before coming to court or while in court. The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints. As our discussion heretofore indicates, the trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record. The court's summary denial of the motion to release defendant from his shackles was not based upon such a showing of record and implies a general policy of shackling all inmate defendants accused of violent crimes. We therefore conclude that it was an abuse of discretion to shackle defendant."

The burden therefore is not on the defendant, but upon the People, to establish in the record the manifest need for the shackling. The cases of *People* v. *Morris,* 20 Cal.App.3d 659 [97 Cal.Rptr. 817]; *People* v. *Pena,* 25 Cal.App.3d 414, 424, 427 [101 Cal.Rptr. 804]; and *People* v. *Earl,* 29 Cal.App.3d 894, 900-901 [105 Cal.Rptr. 831], giving the trial court virtually unlimited discretion to order shackling and placing a "heavy burden" on defendant to show an abuse of discretion, are expressly disapproved by *People* v. *Duran, supra,* 16 Cal.3d 282, 292. *People* v.

*Morris, supra,* 20 Cal.App.3d 659, 666, presumed the judge did his duty "until and unless the defendant shows without equivocation that there was no basis whatever for the restraint employed." This is not the law. ■ Referring to the facts at hand, there has been no showing whatsoever in the record of any nonconforming activity (or threat thereof) on the part of Prado that would condone the use of leg irons in the presence of the jury. The trial court's reference to "inadequate facilities" is not such a showing as to meet the standards of *People* v. *Duran, supra,* 16 Cal.3d 282. We therefore conclude it was an abuse of discretion on the part of the trial court to shackle defendant Prado in the presence of the jury.

■ The more difficult question remains: Does this error, this abuse of discretion, require reversal of the judgment? The evidence inculpating defendant Prado does compel, without question, the guilty verdict. Two victims of the robbery identified Prado as the robber. The views of the eyewitnesses were under conditions from which it could be concluded that a rational identification would follow. The witness Mrs. McDowell was for a period of several minutes' duration in a well-lighted store at close range to Prado while the robbery was in progress. A second witness identified Prado running from the scene of the robbery. Gonzalez, the codefendant, places Prado at the scene of the robbery. Within minutes after the robbery Prado was caught in a vehicle observed leaving the scene of the robbery. He was caught with the loot, the money stuffed beneath his seat in the getaway car. The eyewitness identifications were confirmed within minutes after Prado was apprehended. There is nothing in the record contesting this overwhelming evidence of guilt. The record amply supports the conclusion there is no reasonable probability a verdict more favorable to Prado would have resulted in the absence of this abuse of discretion by the trial court. However, it creates a cloud of dry dust in the judicial throat in announcing on the one hand the unwarranted shackling of defendant in the presence of the jury constitutes an "affront to human dignity" (*People* v. *Duran, supra,* 16 Cal.3d 282, 290), and an "affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold" (*Illinois* v. *Allen,* 397 U.S. 337, 344 [25 L.Ed.2d 353, 359, 90 S.Ct. 1057, 1061]; that the shackling "inevitably tends to confuse and embarrass his [defendant's] mental faculties and thereby materially to abridge and prejudicially affect his constitutional rights of defense . . . ." (*People* v. *Harrington,* 42 Cal. 165, 168); and that the shackling "prejudicially affect[s] his statutory privilege of becoming a competent witness and testifying in his own behalf" (*ibid.,* at p. 168); and, on the other hand, to

announce that the record in this case amply demonstrates (as it truly does) that there is no reasonable probability a result more favorable to Prado would have resulted in the absence of the error, or to put it in the terms of *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 828, 24 A.L.R.3d 1065], the error was present but harmless to Prado "beyond a reasonable doubt." *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243], and *People* v. *Duran, supra,* 16 Cal.3d 282, 295-296, require, in this dilemma, that as to defendant Prado the judgment is affirmed.

The judgment is reversed as to defendant Gonzalez.

The People may, within 30 days of the finality of the decision herein, move to reinstate both charges contained in the information, to set the cause for retrial as to either or both the charged violations of Penal Code section 211 and Penal Code section 32, and the trial will proceed thereafter in accordance with the views expressed herein. Should the People, within the time stated, not move to set the cause for trial, or should the People, within the time, file a record of their waiver of the right to try defendant on the Penal Code section 211 charge, then the trial court shall reinstate the conviction as to the violation of Penal Code section 32 only and render its judgment thereon. (See *People* v. *Hill,* 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1]; *People* v. *Jaramillo, supra,* 16 Cal.3d 752, 760.)

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

A petition for a rehearing was denied March 4, 1977, and respondent's petition for a hearing by the Supreme Court was denied April 14, 1977.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.