DUNNING, J.*
*755 *632 INTRODUCTION
Despite a grant of immunity, defendant and appellant Starletta Partee refused to testify against four individuals charged with a gang-related murder.
*633 A jury convicted her of four felony counts of being an accessory after the fact ( Pen. Code, § 32 )[1] and one count of misdemeanor contempt for refusing to testify (§ 166, subd. (a)(6) ).[2] The trial court suspended imposition of sentence and placed defendant on probation for three years on the condition, among others, that she serve 365 days in the county jail.
Defendant raises several arguments on appeal: the prosecution overreached when it charged her as an accessory for refusing to testify, she cannot be guilty of being an accessory because her silence-refusing to testify-is not an affirmative act, her single act of refusing to testify does not support four felony convictions, the trial court failed to instruct on the elements of contempt, her statements to a detective were admitted into evidence in violation of her Fifth Amendment rights, and her trial counsel was ineffective for failing to raise the Fifth Amendment claim. We find no grounds for reversal and affirm the judgment.
FACTUAL BACKGROUND
On the day of a 2006 gang-related murder, City of Los Angeles police officers found the car they believed the perpetrators drove and then abandoned. The homicide detective, John Skaggs, learned the car had been rented by defendant and that she had contacted the rental car office to report it as stolen. The rental car representative told defendant to file a report with the Hawthorne Police Department. Meanwhile, Detective Skaggs contacted the Hawthorne Police Department and asked to be notified when defendant arrived. Officers from the Los Angeles Police Department met defendant there and drove her back to Detective Skaggs's office.
Detective Skaggs surreptitiously recorded the interview with defendant. After establishing the rental car had been involved in a shooting, the detective told defendant, "Even though I don't have somebody that says that a young black female shot a gun out of a car that hurt somebody, any participation you have and any lies to me, in regards to this investigation, is a crime." The interview then focused on what defendant knew about the involvement of her brother Nehemiah Robinson, her cousin Toyrion Green, and brothers Bryant and Byron Clark, lifelong friends she considered "family," in the shooting. Defendant told the detective Robinson borrowed the rental car the evening before to visit a girl. That morning, one of the Clark brothers telephoned defendant, told her to report the rental vehicle as stolen and asked to be picked up and given money to pay for a *756 motel room. When defendant picked *634 them up, Robinson, Green, and the Clarks told her the previous evening had been a setup. They arrived at the girl's location, but someone blocked them in and others started shooting; they shot their way out. They thought a man was dead. They abandoned defendant's rental car and fled. They added the police would never find the guns.
Robinson, Green, and the Clarks were subsequently charged with murder. When the case went to trial in 2008, however, defendant failed to appear, although subpoenaed as a witness. Attempts to locate her were unsuccessful, and the murder case was dismissed.
In April 2015, defendant was located, subpoenaed, and held in custody as a material witness. The criminal case against Robinson, Green, and the Clarks recommenced. During the June 11, 2015 preliminary hearing-despite a grant of immunity and after declining a relocation offer-defendant refused to testify. The trial court held her in contempt. Ultimately, the murder charges against the four men were once again dismissed.
Defendant was then charged with four felony counts of being an accessory after the fact to murder and one misdemeanor count of contempt for refusing to testify. She testified in her own trial and provided several reasons for refusing to testify in the murder case: she feared retaliation by the gang (she had experienced retaliation in the past); she feared for her safety and that of her daughter; she did not want to alienate her family; all four of the accused were family to her, and she did not want them to go to prison for the rest of their lives because of her testimony. Defendant further acknowledged that when she refused to testify in 2015 she knew her failure to appear as a witness in 2008 had led to the murder case being dismissed. But she denied she was helping her brother avoid trial. She testified: "Well, you guys are saying that I am helping my brother avoid trial. I believe you guys still have a case without me." She added that when her family members discovered she had spoken with Detective Skaggs, they told her not to testify because "[f]amily is first."
DISCUSSION
I. Sections 32 and 166
Defendant was convicted of four counts of being an accessory after the fact in violation of section 32. Section 32 defines an accessory as "[e]very person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted *635 thereof, is an accessory to such felony." A "principal" includes "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission...." (§ 31.) Being an accessory after the fact is a "wobbler" offense, punishable as either a misdemeanor or felony. (§ 33.)
"The crime of accessory consists of the following elements: (1) someone other than the accused, that is, a principal, must have committed a specific, completed felony; (2) the accused must have harbored, concealed, or aided the principal; (3) with knowledge that the principal committed the felony or has been charged or convicted of the felony; and (4) with the intent that the principal avoid or escape from arrest, trial, conviction, or punishment." ( People v. Plengsangtip (2007) 148 Cal.App.4th 825, 836, 56 Cal.Rptr.3d 165 ( Plengsangtip ); accord, *757 People v. Tran (2013) 215 Cal.App.4th 1207, 1219, fn. 7, 155 Cal.Rptr.3d 803 ( Tran ).) As section 32 expressly states, an accessory must know he or she is assisting a felon or one who has been charged with or convicted of a felony. ( Tran, supra, 215 Cal.App.4th at p. 1219, 155 Cal.Rptr.3d 803.) The effect of an accessory's actions is "to lessen the chance that the perpetrators will be captured and held accountable for their crimes." ( People v. Cooper (1991) 53 Cal.3d 1158, 1168, 282 Cal.Rptr. 450, 811 P.2d 742.)
A defendant may be convicted of being an accessory even if the principal is not prosecuted. (§ 972.) Section 972 provides: "An accessory to the commission of a felony may be prosecuted, tried, and punished, though the principal may be neither prosecuted nor tried, and though the principal may have been acquitted." The prosecution against defendant as an accessory after the fact properly went forward even though Robinson, Green, and the Clarks were never brought to trial.
Defendant was also convicted of misdemeanor contempt for refusing to testify. Section 166 sets forth conduct constituting a contempt of court. Under subdivision (a)(6), a contempt includes "[t]he contumacious and unlawful refusal of a person to be sworn as a witness or, when so sworn, the like refusal to answer a material question." Contempt under section 166 is a general intent crime. ( People v. Greenfield (1982) 134 Cal.App.3d Supp. 1, 4, 184 Cal.Rptr. 604.)
*636 II. Prosecutorial Overreaching
Defendant argues charging her with crimes purportedly carrying a potential 40-year sentence[3] constituted prosecutorial overreaching and asks this court to *758 "emphatically reject this prosecutorial overreach, and reaffirm that recalcitrant witnesses can be subjected to coercion and punishment for contempt, but cannot be thrown in prison for decades." Defendant, however, has not shown she raised this argument in the trial court. Nor does she cite any authority on prosecutorial overreaching in support of her claim. She cites no authority precluding the accessory and contempt charges based on her refusal to testify. The Attorney General did not specifically address the overreaching claim in his brief or at oral argument. Defendant forfeited the issue by failing to raise it in the trial court.
Defendant's forfeiture notwithstanding, there is precedent for an accessory conviction under the facts of this case. Under similar circumstances, our Courts of Appeal have held defendants were properly charged with or convicted of being accessories. In Plengsangtip, supra, 148 Cal.App.4th at pages 835 through 839, 56 Cal.Rptr.3d 165, for example, the Court of Appeal held evidence *637 adduced at a preliminary hearing sufficed to support an accessory charge where the defendant lied to a detective and falsely denied knowledge of a murder with the intent to shield the murderer. In In re I.M. (2005) 125 Cal.App.4th 1195, 1203-1206, 23 Cal.Rptr.3d 375 ( I.M . ), the Court of Appeal held substantial evidence supported sustaining a juvenile delinquency petition where the minor, with the intent the principal escape prosecution, falsely told police the principal shot the victim in self-defense or heat of passion. And in People v. Duty (1969) 269 Cal.App.2d 97, 100-105, 74 Cal.Rptr. 606 ( Duty ), the Court of Appeal concluded substantial evidence supported the defendant's accessory conviction where he gave a false alibi to the public investigator with the intent to shield the perpetrator of the crime from prosecution and punishment.
Under federal law, an individual who refuses to testify despite an immunity grant with the intent to aid a felon and who is convicted of criminal contempt may be sentenced by analogy to the crime of being an accessory after the fact. (E.g., United States v. Brady (1st Cir. 1999) 168 F.3d 574, 576 ( Brady ); United States v. Ortiz (7th Cir. 1996) 84 F.3d 977, 978-979 ( Ortiz ).) This scenario arises because there is no federal sentencing guideline specific to criminal contempt. ( Brady, supra, 168 F.3d at p. 577 ; Ortiz, supra, 84 F.3d at p. 979.) Instead, the United States Sentencing Guidelines provide that in the case of criminal contempt, the sentencing court should adopt the sentencing guideline for the most analogous criminal conduct.[4] ( U.S.S.G. §§ 2J1.1, 2X5.1[5] ; Brady, supra, 168 F.3d at p. 576 ; Ortiz, supra, 84 F.3d at p. 979.)
In Brady , the defendant's refusal to testify despite immunity was motivated in part by a desire to frustrate a grand jury investigation of a robbery-murder and protect his friends. Accordingly, the sentencing guideline for accessories after the fact was appropriately applied. ( Brady, supra, 168 F.3d at pp. 576-581.) In Ortiz , by contrast, the defendant's refusal to testify despite immunity was not designed to assist *759 another defendant to escape punishment; the defendant simply did not want to testify. Under those circumstances, it was error to apply the accessory after the fact sentencing guideline. ( Ortiz, supra, 84 F.3d at pp. 980-982 ; see also Wright v. McAdory (Miss. 1988) 536 So.2d 897, 904 [murder witness could not be held in contempt for refusal to *638 testify where immunity grant was inadequate because it did not encompass accessory after the fact liability].)
In this case, despite being held in custody as a material witness and offered immunity and relocation, defendant's refusal to testify was motivated in part by the desire to ensure that her brother, cousin, and lifelong friends were not convicted and incarcerated. As a result, four accused murderers avoided trial and possible conviction. The prosecution, having tried in vain to compel defendant's testimony, and no doubt desiring to discourage similar behavior by other witnesses, particularly in gang-related cases, resorted to the present prosecution. We find no legal authority precluding it.
We also note defendant's refusal to testify contrasts sharply with the conduct of victims and witnesses who, having previously made out-of-court statements concerning a crime, take the stand and then claim a lack of memory. Under those circumstances, if the witness's memory loss is feigned and the record supports the conclusion that the "I don't remember" statements are evasive and untruthful, the witness's out-of-court statements are properly admitted. ( Evid. Code, §§ 770, 1235 ; People v. Johnson (1992) 3 Cal.4th 1183, 1219-1220, 14 Cal.Rptr.2d 702, 842 P.2d 1.) Not so in a situation like this one, where defendant's refusal to testify because "[f]amily is first" did not permit her to be impeached with her prior out-of-court statements.
Defendant argues existing contempt remedies are adequate and by concluding otherwise we usurp the Legislature's function. We disagree. Defendant did much more than simply commit contempt by refusing to testify. The jury found she refused to testify with the specific intent to help four accused murderers avoid trial, conviction, and punishment. The intent with which defendant acted distinguishes her level of culpability from that of a simple contempt. The nature and potential impact of defendant's conduct-here, the inability to prosecute accused murderers-renders the contempt penalty inadequate to enable a court to vindicate its authority and to maintain the dignity and respect that is its due. (See In re McKinney (1968) 70 Cal.2d 8, 12, 73 Cal.Rptr. 580, 447 P.2d 972.)
Further, as discussed above, our courts recognize conduct of this nature committed with the intent to shield an accused criminal is punishable under the accessory law. ( Plengsangtip, supra, 148 Cal.App.4th at pp. 835-839, 56 Cal.Rptr.3d 165 ; I.M., supra, 125 Cal.App.4th at pp. 1203-1206, 23 Cal.Rptr.3d 375 ; Duty, supra, 269 Cal.App.2d at pp. 100-105, 74 Cal.Rptr. 606.) Our holding here is consistent with this prior decisional authority and does not displace the Legislature's power to prescribe punishment for crimes.
*639 III. Sufficiency of the Evidence as to the Accessory Convictions
Defendant claims she cannot be guilty as an accessory after the fact because her silence-refusing to testify-is not an affirmative act. The Attorney General argues the law of the case doctrine applies and the issue was decided adversely to defendant when this court summarily denied her petition for a writ of mandate following the trial court's denial of her section 995 motion (Partee v. Superior *760 Court (March 18, 2016, B270799) [nonpub. order] ).
We disagree with the Attorney General's position. Although our order summarily denying defendant's writ petition included citations to legal authority, we did not issue an alternative writ or a written opinion. And, as defendant correctly argues, "the denial of a writ petition does not establish law of the case unless the denial is accompanied by a written opinion following the issuance of an alternative writ." ( Kowis v. Howard (1992) 3 Cal.4th 888, 891, 12 Cal.Rptr.2d 728, 838 P.2d 250 ; accord, People v. Jones (2011) 51 Cal.4th 346, 370, fn. 4, 121 Cal.Rptr.3d 1, 247 P.3d 82.) The law of the case doctrine does not apply.
On the merits, however, we conclude defendant's refusal to testify supports her accessory convictions. "Mere silence after knowledge of [a felony's] commission is not sufficient to constitute the party an accessory." ( People v. Garnett (1900) 129 Cal. 364, 366, 61 P. 1114.) Some affirmative act is required. ( Ibid. ) An affirmative falsehood, for example, such as a false alibi made with the requisite knowledge and intent, will support an accessory conviction. ( Duty, supra, 269 Cal.App.2d at pp. 101-104, 74 Cal.Rptr. 606.) As will a false statement to police that the perpetrator acted in self-defense or in the heat of passion. ( I.M., supra, 125 Cal.App.4th at pp. 1203-1205, 23 Cal.Rptr.3d 375.) In contrast, "the mere passive failure to reveal a crime, the refusal to give information, or the denial of knowledge motivated by self-interest does not constitute the crime of accessory." (Plengsangtip, supra, 148 Cal.App.4th at p. 876, 56 Cal.Rptr.3d 165, citing People v. Nguyen (1993) 21 Cal.App.4th 518, 527, 537-539, 26 Cal.Rptr.2d 323.)
However, as we explained in denying defendant's writ petition: " Penal Code section 32 proscribes '[a]ny kind of overt or affirmative assistance to a known felon,' so long as the assistance is provided with the intent that the perpetrator avoid arrest, trial, conviction, or punishment. ( Duty [, supra, ] 269 Cal.App.2d [at p.] 104 [74 Cal.Rptr. 606].) The failure to act is not an 'overt or affirmative' act unless there is a duty to act. (See People v. Heitzman (1994) 9 Cal.4th 189, 197 [37 Cal.Rptr.2d 236, 886 P.2d 1229] ['when an individual's criminal liability is based on the failure to act, it is well established that he or she must first be under an existing legal duty to take positive action'].) A witness who has been subpoenaed and given immunity that is co-extensive with the scope *640 of her Fifth Amendment privilege has a duty to testify. ( Pen. Code, § 1324 ; Kastigar v. United States (1972) 406 U.S. 441, 453 [92 S.Ct. 1653, 32 L.Ed.2d 212] ; People v. Smith (2003) 30 Cal.4th 581, 624 [134 Cal.Rptr.2d 1, 68 P.3d 302].)" (Partee v. Superior Court, supra, at pp. 1-2.) Under these circumstances, defendant's "silence" was an overt or affirmative act falling within the terms of section 32 because she had a duty to testify at defendants' preliminary hearing.
There was also substantial evidence defendant refused to testify with the requisite intent to support an accessory after the fact conviction-that Robinson, Green, and the Clarks avoid arrest, trial, conviction or punishment. Until she was questioned by Detective Skaggs-after she falsely told the rental company the vehicle had been stolen-defendant did not report the shooting and possible death to the police. As defendant explained to Detective Skaggs, she provided transportation and money to her brother, cousin, and friends and reported the rental vehicle stolen even though she knew there had been a shooting *761 in which her brother, cousin, and the Clarks were involved; someone had been shot and likely died; her brother and his companions fled the scene and abandoned the rental car; and they disposed of the guns used in the shooting. Defendant dismissed another cousin's suggestion she send Robinson to retrieve the abandoned vehicle saying, "I don't want [him] to get in any trouble...." She told the detective she was "trying to cover for [Robinson]." When Detective Skaggs encouraged defendant to bring "those boys" in, defendant said, "I don't want to do it." She refused to "try to talk sense to them." Defendant also said she would refuse to testify against them in court because "that's my family, you help them" and she did not want her testimony to send them to prison. She was reluctant to get involved: "I know they did it. And I know it's wrong, but ... it's my family." Further, defendant testified in her own trial that when she refused to testify in 2015, she knew criminal charges against the four individuals had been dismissed in 2008 after she failed to appear.
IV. One Accessory Count Versus Four
Defendant argues even if there was sufficient evidence to convict her as an accessory, she could not be charged with and convicted of four accessory counts based on her single act of refusing to testify. We disagree.
Each accessory count specifically identified defendant as aiding a single individual in violation of section 32 : count 1-Robinson, count 2-Green, count 3-Bryant Clark and count 4-Byron Clark. Each count also specifically alleged defendant harbored, concealed and aided the individual "with the intent that [he] might avoid and escape from arrest, trial, conviction, and *641 punishment for" the charged felony-murder. Each count had its own verdict form and the jury found defendant guilty as an accessory as to each individual.
As discussed above, a person is guilty of being an accessory when, after a felony has been committed, he or she aids a principal in the felony, with knowledge the principal has committed or been charged with the felony, and with the intent that the principal avoid or escape arrest, trial or punishment. ( § 32 ; Plengsangtip, supra, 148 Cal.App.4th at p. 836, 56 Cal.Rptr.3d 165.) Section 32 refers to a principal, that is, an individual who committed a crime. By her refusal to testify, defendant aided four principals-her brother, her cousin, and two others she considered family-with the intent that each of them avoid or escape trial, conviction or punishment. Under these circumstances, she was properly charged with and convicted of four separate violations of section 32.
The decisions defendant relies on for a contrary holding are unavailing. In People v. Perryman (1987) 188 Cal.App.3d 1546, 1549, 234 Cal.Rptr. 181, the principal committed two felonies. The Court of Appeal held the defendant was nevertheless guilty of only one act of being an accessory after the fact: "The crime of accessory after the fact is complete when the accused assists the principal in escaping apprehension knowing that person has committed a felony. The number of the underlying felonies is not determinative of defendant's guilt. Even if the defendant knew the principal committed more than one crime in a single transaction, he may be charged with only one act of being an accessory after the fact." ( Ibid. )
The issue here is not whether a principal committed multiple crimes, but whether defendant aided multiple principals. Defendant may be convicted of being an accessory as to each of the four men she aided by refusing to testify; the refusal to testify *762 against each individual was a separate crime.
People v. Mitten (1974) 37 Cal.App.3d 879, 112 Cal.Rptr. 713 ( Mitten ), on which defendant also relies, is less helpful. The defendant was charged with being an accessory after he helped bury two murder victims' bodies. ( Id. at pp. 881-882, 112 Cal.Rptr. 713.) But the sole issue in Mitten was whether the trial court properly granted the defendant's motion to dismiss the information for improper venue. Mitten did not hold a defendant can only be convicted of one count of being an accessory when there are multiple principals within the meaning of section 32.
Defendant further notes, "The prosecution ... refused to concede that [she] could not be punished for all five counts under section 654, even though there could be no doubt of that under applicable law." Section 654 states: "An act *642 or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).) Defendant does not explain how any punishment violated section 654. As noted above, imposition of sentence was suspended and defendant was placed on probation. (See People v. Martinez (2017) 15 Cal.App.5th 659, 669, 223 Cal.Rptr.3d 417 [section 654 claim not ripe for adjudication where imposition of entire sentence suspended and probation granted]; People v. Wittig (1984) 158 Cal.App.3d 124, 137, 204 Cal.Rptr. 378 [no double punishment issue where imposition of sentence suspended and probation granted].) Moreover, defendant does not explain how section 654 impacts her convictions. Section 654 prohibits multiple punishment, not multiple convictions. ( People v. Miller (1977) 18 Cal.3d 873, 885, 135 Cal.Rptr. 654, 558 P.2d 552.)
V.-VI.**
DISPOSITION
The judgment is affirmed.
I concur:
KRIEGLER, Acting P. J.

Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts V and VI.

All statutory references are to the Penal Code.

The jury found allegations that the crimes were committed for the benefit of a criminal street gang were not true. (§ 186.22, subds. (b)(1).)

The information erroneously indicated each accessory count carried a potential 10-year enhancement based on section 186.22, subdivision (b)(1)(C). Subdivision (b)(1)(C) applies where the crime committed is a violent felony and adds 10 years to a sentence. Being an accessory after the fact is not a violent felony. (§ 667.5, subd. (c).) In any event, the jury verdict form specified section 186, subdivision (b)(1), and the applicable gang enhancement, subdivision (b)(1)(A), could add two, three, or four years to the base term. As indicated, however, the jury did not find the gang allegations to be true.
A misdemeanor contempt conviction is punishable by up to six months in the county jail. (§§ 19, 166, subd. (a)(6).) A gang benefit finding under section 186.22, subdivision (d) elevates the offense from a straight misdemeanor punishable by up to six months in the county jail to a "wobbler"; subdivision (d) of section 186.22 is an alternate penalty provision that gives the trial court discretion for sentencing purposes to treat the contempt as a misdemeanor punishable more severely by up to one year in the county jail or as a felony punishable by one, two, or three years in state prison. (§ 186.22, subd. (d); People v. Fuentes (2016) 1 Cal.5th 218, 224, 204 Cal.Rptr.3d 818, 375 P.3d 928 ; Robert L. v. Superior Court (2003) 30 Cal.4th 894, 897, 909, 135 Cal.Rptr.2d 30, 69 P.3d 951 ; People v. Arroyas (2002) 96 Cal.App.4th 1439, 1444-1445, 118 Cal.Rptr.2d 380.)
However, when a defendant is convicted of being an accessory after the fact for refusing to testify, any sentence for the misdemeanor contempt conviction based on the same act is subject to a section 654 stay. (People v. Mesa (2012) 54 Cal.4th 191, 199-200, 142 Cal.Rptr.3d 2, 277 P.3d 743 ; People v. Louie (2012) 203 Cal.App.4th 388, 399, 136 Cal.Rptr.3d 646 ["a single criminal act may result in only one punishment, even if the defendant harbored multiple objectives"].)
Had the jury found defendant committed the crimes for the benefit of a criminal street gang, the maximum sentence would have been 12 years: on count 1, three years (§ 32 ) plus four years (§ 186.22, subd. (b)(1) ); on counts 2, 3, and 4, an additional eight months each (§ 32 ), plus one year per count (§ 186.22, subd. (b)(1) ); and on count 5 (contempt), an additional three years (§§ 166, subd. (a)(6), 186.22, subd. (d) ) stayed pursuant to section 654. Because the jury did not find the gang allegations to be true, defendant's maximum exposure was five years. As noted, she was given probation.

What constitutes the most analogous criminal conduct presents a mixed question of law and fact. (Brady, supra, 168 F.3d at p. 577.) The federal accessory after the fact statute provides: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." (18 U.S.C. § 3.)

United States Sentencing Guideline section 2X5.1 provides in part: "If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline."

See footnote *, ante .