[Crim. No. 3284. Fourth Dist., Div. One. Apr. 20, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES MICHAEL LOHMAN, Defendant and Appellant.

James H. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Alexander B. McDonald, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Charles Michael Lohman (Lohman) appeals from a judgment of conviction of burglary, concealing stolen property, grand theft of

a vehicle (Pen. Code, § 487, subd. 3) and conspiracy to conceal stolen property.

Lohman was charged jointly with Clifford Bennett, Ronald Owings, George Miller and Richard Cook of the above crimes. Lohman was charged in a supplement to the indictment with three prior felonies, which he admitted before trial.

### STATEMENT OF THE EVIDENCE

Using the name Charles P. Trout, Lohman negotiated with the owner for the lease of a warehouse on West Vista Way. Lohman told the owner he wanted to use the property for a garage and some electronic work, but first he wanted his partner to see it. On January 28, 1967, Lohman returned to the owner with Bennett; a lease was signed for two years; and Bennett made an advance payment of $100.

Again using the name Charles P. Trout, Lohman signed an application for service of electricity at the warehouse. Again he brought Bennett to the person who took the application and Bennett paid the deposit.

A city license inspector processed an application in the name of Trout-Miller Automotive for a license to do business at the leased premises.

There was expert opinion that the same person had signed the applications for electric service and for the business license.

The foregoing testimony was from witnesses who were not accomplices of Lohman.

Accomplice testimony was given by Bennett and Cook.

Bennett testified as follows: He and Lohman had rented the warehouse, arranged for the utilities and applied for the license because they were doing legitimate business at the garage and a representative of the city of Vista had inquired why they did not have a license; he and George Miller assumed half the expenses and also did any work to be done in the shop; Lohman was given the responsibility of locating a building for the business and Bennett let Lohman make the transaction for him; on the evening of February 28, 1967, Lohman and the other defendants spent about three hours at the warehouse making plans to obtain a Corvette from Harloff Chevrolet in Encinitas; Miller had earlier stated he wanted a Corvette and Cook told him he could find one at Harloff; during the daytime on February 28, Miller, Bennett and Owings went to Harloff, looked at the car, and Owings took the keys from it; they returned to the warehouse and discussed with the others, mainly Miller, how they could get the car, and also talked about burglarizing Harloff; at about 9 p.m. Miller, Bennett and Owings drove to a hilltop

near Harloff to wait for Lohman and Cook; at about 11 p.m. the five met and agreed Miller and Owings would cut the telephone lines at Harloff in case a burglar alarm was connected to them; Cook and Lohman remained on the hilltop and Bennett was stationed at a midpoint; after cutting the telephone lines and entering the building, Miller and Owings "cased" Harloff and set aside some tools and parts; they returned to the hilltop and thereafter Lohman, Owings and Bennett went to Harloff and entered the building; the parts and tools selected by Miller and Owings were loaded by Miller, Owings and Lohman into a pickup truck parked in the building; Lohman went to the parking lot and started the Corvette; Bennett drove the pickup away and observed Lohman driving the Corvette behind him; both vehicles were taken to the warehouse and the tools were put in a hidden room therein. Bennett drove the truck to an isolated spot, removed parts from it, and returned in Cook's car; inside the warehouse the engine of the Corvette was replaced by a new engine, and the body was painted black.

Cook's testimony was that all the defendants, including Lohman, went into the Harloff building; he also stated that before the burglary he had driven Lohman to Encinitas and that while en route he had seen Lohman with a gun about an hour before the burglary but did not know where the gun was during the incident.

Franklin Johnson, an employee at Harloff, established that an illegal entry had been made during the night of February 28-March 1; that upon his arrival the following morning he found a door to the repair shop had been removed and replaced, the telephone lines had been cut and numerous tools and parts were missing, as well as the Corvette and pickup; the Corvette had not been seen since.

The pickup truck was found abandoned about a mile and a half from the warehouse, with some of its equipment missing.

A search of the warehouse under a search warrant disclosed various mechanic's tools, equipment and other items taken from Harloff. They were identified by Johnson and another employee of Harloff.

There was also discovered a hidden room at the West Vista Way premises containing numerous tools and parts in boxes marked with General Motors and Chevrolet insignias, also identified as having been stolen from Harloff. The room was separated from the main part of the warehouse by a wall of paneling, one section of which, although it showed nail-heads, was in fact secured by screws, the pointed ends of the nails having been cut off at the inner face of the panel.

Gary Wilson, Bennett's nephew, testified he had two conversations with Lohman; the first was in the Wilson home in the early part of 1967, where

Lohman stated he had a Corvette which was to be painted black; Wilson was not sure, but thought Lohman said the car had come from Harloff. The second conversation took place in a jail cell occupied by Lohman and Wilson during the latter part of October 1967 after Bennett and Cook had been convicted. At that time Lohman said if anyone was going to inform he was going to take everyone with him.

## CONTENTIONS ON APPEAL

Lohman raises the following contentions on appeal:

1. The trial court erred in denying Lohman's motion for acquittal made after the prosecution's case, because the evidence presented no sufficient corroboration of the accomplice testimony.

2. The court erred in denying Lohman's request for instruction on the alternative nature of the charges of the crimes of grand theft and receiving stolen property and in failing to acquit Lohman of the count charging him with conspiracy to conceal stolen property.

3. The court erred in denying Lohman's motion for dismissal based on the denial of the right to a speedy trial and the right to produce witnesses.

## FIRST CONTENTION

██ Under Penal Code, section 1111,[1] evidence is not sufficient corroborating evidence that merely shows association with the actual criminals, or that only casts grave suspicion on the defendant, or which fails to connect defendant with the crime itself, or which is not corroborative of an element of the crime itself.

*People* v. *Reingold,* 87 Cal.App.2d 382, 393 [197 P.2d 175], set forth the required character of the corroborating evidence as follows: "First, . . . the corroboration is not sufficient if it *requires interpretation and direction* to be furnished by the accomplice's testimony to give it value; second, . . . the corroborative evidence to be sufficient and of the required *substantial* value *must tend directly and immediately* to connect the defendant with the offense . . .; and third, . . . the corroborative evidence is insufficient when it merely casts a grave suspicion upon the accused."

*People* v. *Lyons,* 50 Cal.2d 245 [234 P.2d 556], held the corroborative

---

[1]Penal Code, section 1111, provides in pertinent part as follows: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is . . . one who is liable . . . for the identical offense charged against the defendant on trial . . ."

evidence sufficient if, uninterpreted by the testimony of the accomplice, it tends to connect defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; corroborative evidence must relate to *some act or fact which is an element of the crime* but need not be sufficient in itself to establish every element of the offense charged.

In *People* v. *Morton,* 139 Cal. 719, 724 [73 P. 609], the court stated: "[E]liminate . . . the evidence of the accomplice, and then examine the evidence of the other . . . witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no *inculpatory* evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him."

■ The following non-accomplice evidence is sufficient to corroborate the accomplice testimony: Lohman used an assumed name when he inquired about leasing the warehouse and when he applied for utility service; he told Neil D. Roberds that Bennett was his partner; he took an active part in establishing the business where the stolen goods were discovered; his name appeared prominently on the business license; these matters took place within a month of the burglary at the Harloff agency; a concealed room was constructed on the leased premises in which was found some of the loot of the burglary; equipment for painting cars was on the premises; at a time which was consistent with the period immediately following the theft of the Corvette, Lohman told Wilson he had a Corvette that was to be painted black in language suggesting the Corvette had been stolen; after the arrest, and after Miller and Cook had been convicted, Lohman told Wilson if anyone informed he would take them all with him.

Evidence relating to business transactions which occurred between the two defendants before the offense was committed is material. (*People* v. *Kelly,* 69 Cal.App. 558, 566 [231 P. 767].)

So also is evidence of the use of an alias, when considered with evidence of business transactions unrelated to the offense. (*People* v. *Kelly,* 146 Cal. 119 [79 P. 846].)

Evidence tending to show a consciousness of guilt on the part of the defendant is strongly corroborative of accomplice testimony. (*People* v. *Lyons, supra,* 50 Cal.2d 245.)

In the case at bench the evidence is overwhelming of a conspiracy to engage in theft and the concealment of stolen property not confined to the single transaction at the Harloff agency. "Where, as here, the prosecution evidence discloses the existence of a conspiracy or agreement whereby

the principal prosecution witnesses were to steal and defendant was to purchase the stolen property, it is both logical and reasonable to hold that they are accomplices in the offense or offenses resulting from execution of such plan." (*People* v. *Lima*, 25 Cal.2d 573, 578 [154 P.2d 698].)

Apart from the consequences of that rule as applied to the facts of the present case, the background of conspiracy, when coupled with the assertion of possession of a Corvette to be painted black, which had disappeared by the time of the search on March 8, the post-indictment threat of reprisal against any informer, and the actual presence on the leased premises of other of the fruits of the burglary, furnishes sufficient corroboration of Bennett's testimony as to the burglary and theft of the Corvette.

██ The self-implication of Bennett and Cook does not require corroboration, the corpus delicti having been established by other independent evidence.

## SECOND CONTENTION

██ Lohman requested an instruction stating in effect that should the jury find him guilty of either burglary or grand theft of the Corvette they must find him not guilty of receiving and concealing stolen property, and vice versa should they find him guilty of receiving and concealing.

Our discussion will show the instruction to have been properly refused on the evidence.

It is clear that under the evidence defendant might have been found guilty of the burglary; that he might have been found guilty of the theft of miscellaneous tools and automotive parts; that he might have been found guilty of theft of the Corvette; that he might have been found guilty of conspiracy to receive and conceal stolen property.

Under the evidence, the conviction of some one of the crimes might possibly exclude conviction of some other one crime.

If the Corvette had been the only thing stolen, the requested instruction perhaps would have been proper. But other articles also were stolen in the concealment of which Lohman participated, of which no mention was made in the instruction.

██ However, the evidence shows that Lohman actively participated in the theft of tools and parts, as well as of the Corvette taken in the burglary. He was not, therefore, in the situation of the defendant in *People* v. *Stoddard*, 48 Cal.App.2d 86 [119 P.2d 160], who, while a member of a conspiracy to commit theft, did not engage as an actor in the thefts and was held punishable as a receiver of stolen property. Accordingly, the conviction

of a violation of section 496, Penal Code, should not be allowed to stand. (*People* v. *Taylor*, 4 Cal.App.2d 214 [40 P.2d 870].)

■ But the conviction of conspiracy to receive and conceal stolen property is not subject to the same vulnerabiltiy. The evidence here is susceptible of a reasonable and strong inference that the conspiracy antedated the specific design to burglarize the Harloff agency, and was of a general and continuing nature, which encompassed all but was not limited to the proceeds of any particular theft that might be committed. It was intended to and did continue after the burglary and theft at the Harloff agency.

The count of the indictment charging the conspiracy alleges the defendants conspired between January 25 and March 8, the day the sheriff's officers searched the warehouse. Two of the overt acts alleged and proved took place in the month of January.

The contention made by Lohman that the charge of conspiracy should not have been one to receive and conceal stolen property but to commit grand theft mistakes the scope of the conspiracy charged and proven.

The conspiracy, therefore, was not of the restricted type found in *People* v. *Rainey*, 224 Cal.App.2d 93 [36 Cal.Rptr. 291].

Lohman was properly convicted of the separate crimes of burglary, grand theft and conspiracy.

The method of sentencing employed by the trial court was chosen to avoid any possible violation of section 654, Penal Code.

### THIRD CONTENTION

The trial commenced on February 29, 1968.

The indictment was returned on March 29, 1967; Lohman was arraigned on March 31, and the trial was then set for May 24; on May 5, Lohman requested the court to appoint counsel; on May 21 he was certified for examination as to his then present sanity; a hearing on that issue was set for May 31 when Lohman was found to be not then presently sane and was committed to the Department of Mental Hygiene; on September 6 he appeared in court with counsel, entered the additional plea of not guilty by reason of insanity, doctors were appointed to examine him, and the trial was set for October 30; on October 18 he appeared again with counsel and a third doctor was appointed to examine him in connection with his plea; on October 30 he was again certified for examination as to his then present sanity and a hearing was set for November 1, on which date he was again committed as not being then presently sane; he filed a petition

for writ of habeas corpus in San Luis Obispo County where the superior court, on December 1, ordered him released from the state hospital to be returned to San Diego County; he next appeared before the San Diego County Superior Court on January 9, 1968 when trial was set without objection for February 29.

Cook had been convicted on May 25, 1967, and Bennett probably at the same time.

Lohman contends the passage of time between December 1 and January 9 deprived him of his right to a speedy trial.

The record does not disclose why Lohman did not appear for the setting of his trial until January 9. It may be assumed that the reason was other than negligence on the part of the prosecution. No motion was made on January 9 to dismiss for lack of prosecution.

The motion to dismiss under Penal Code, section 1118.1, actually was made after all the evidence was in.

No showing has been attempted that witnesses had become dispersed or missing as a restult of the unexplained delay.

In the absence of an affirmative showing of prejudice, the rule is applicable that when no objection is made to the setting of a trial date more than 60 days after the filing of the accusatory pleading, consent to the setting is presumed (*People* v. *Wilson,* 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452]). Such consent amounts to a waiver of the statutory limitation. The right to a speedy trial may be waived (*People* v. *Baker,* 164 Cal.App.2d 99, 103 [330 P.2d 240]).

Except for the period December 1, 1967 to January 9, 1968, the delay is explained by the successive proceedings to determine present sanity. Such delay for such purpose does not deny the right to a speedy trial (*People* v. *Hocking,* 140 Cal.App.2d 778 [296 P.2d 59]; *People* v. *McGill,* 257 Cal.App.2d 759, 761 [65 Cal.Rptr. 482]).

The appellant has the burden of producing a record that affirmatively shows error (*People* v. *Phillips,* 163 Cal.App.2d 541, 545 [329 P.2d 621]; *People* v. *Rocha,* 130 Cal.App.2d 656, 663 [279 P.2d 836]).

This court may not consider matters not shown by the record (*People* v. *Krug,* 256 Cal.App.2d 219, 222 [63 Cal.Rptr. 813]).

The judgment is affirmed as to counts one (burglary), three (grand theft) and six (conspiracy to receive and conceal); it is reversed as to count two (receiving and concealing stolen property).

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied May 7, 1970, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1970.