[Crim. No. 10933. Third Dist. Feb. 25, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
HAROLD THOMAS FRANCIS, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Lisa Short, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Garrett Beaumon and Eileen Ceranowski, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WARREN, J.*—A jury found Harold Francis guilty of murder in the first degree (Pen. Code, §§ 187 and 189)[1] and of being an accessory to the same murder (Pen. Code, § 32).[2] The jury also found that Francis was insane at the time of the murder offense but sane at the time of the accessory offense. Finding he had not recovered his sanity, the court committed Francis to Atascadero State Hospital for a maximum period of life and a minimum period of 90 days. With respect to the accessory conviction, the court sentenced him to state prison for the upper term of three years but stayed execution of the sentence during the period of commitment to Atascadero and ordered the stay to become permanent upon the expiration of three years. Defendant appeals from the judgment of commitment only as to the verdict of guilty of murder and from the judgment and sentence with respect to the accessory conviction.

Three issues have been raised on this appeal: (1) the appropriate form of appellate relief to be afforded in light of defendant's alleged erroneous conviction as both a principal and accessory; (2) whether the trial court properly admitted certain purported hearsay declarations;

---

*Assigned by the Chairperson of the Judicial Council.

[1]Penal Code section 187 provides in pertinent part: "(a) Murder is the unlawful killing of a human being, or a fetus, with malice aforethought."

Penal Code, section 189 provides in pertinent part: "All murder which is perpetrated ... by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem ... is murder of the first degree; and all other kinds of murders are of the second degree."

[2]Penal Code section 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

and (3) whether the jury was properly instructed on aiding and abetting.

Finding the murder conviction to be error-free and supported by substantial evidence, we conclude the appropriate form of relief is to uphold it and to vacate the accessory conviction. We also conclude the purported hearsay declarations were properly admitted into evidence and that, under the circumstances of this case, the jury was properly instructed on aiding and abetting.

FACTS

On December 26, 1979, Tom Francis and David Baker picked up Arthur Haynan at the Motel 6 in Napa. Haynan received a refund of $11.34 upon checking out of the motel. The three men drove around in a vehicle registered to Francis, stopping once at a bank where Haynan withdrew $70, and again to eat near the intersection of County Roads 90 and 12A in Yolo County. Francis and Haynan were in the front seat and Baker in the rear. While parked on the side of the road Haynan began talking about Francis' grandmother, commenting that "she was too old to live" and "needed to die." A fight ensued and Haynan was stabbed with a knife. He managed to escape from the car but was pursued by Baker. Alonzo Riley was driving along County Road 90 when he observed Haynan being chased. Haynan ran in front of Riley's vehicle. Riley stopped, Haynan jumped inside, Haynan then told Riley to lock the door and take off. Haynan, appearing frightened, exclaimed, "They tried to rob me and take my money. He was clutching a bloody $20 bill. Baker returned to Francis' car which took off to the south on Interstate 505. Haynan then requested Riley to drive him to a bus stop. After a mile or two, Haynan stated that he had been stabbed in the back and stomach. Riley asked who stabbed him, and Haynan replied, "Francis." He then requested to be driven to a hospital, urging Riley to "Hurry, hurry, hurry." Haynan appeared to be "getting weaker" and was "moaning and groaning." Enroute to the hospital, Riley requested assistance from a California highway patrolman, who summoned an ambulance. A deputy sheriff arrived shortly after Riley's contact with the highway patrolman. Haynan stated to the deputy, "I have been stabbed." When asked who stabbed him he said that Tom Francis had. Haynan died that afternoon from multiple stab wounds.

After Francis purchased an item costing $84.75 from a jewelry shop, Francis and Baker drove to Richard Suniga's apartment in Fairfield where they related some details of the stabbing incident.[3] Francis had discussed robbing Haynan with Suniga about one month earlier. At Francis' suggestion, Suniga telephoned the Yolo County Sheriff's office to inquire about Haynan's condition. The call was aborted because Francis was afraid it was being traced. Francis then traded cars with Suniga. On December 29, 1979, Francis and Baker were arrested in Phoenix, Arizona, in Suniga's car. A folding buck knife was recovered from Francis' belt upon his arrest. In addition, a note written by Baker reading "If he sits in the back, he is safer to hit," was found under the driver's seat.

At trial, a forensic pathologist identified the folding buck knife as the weapon which inflicted the mortal wound. The defense presented evidence that another knife recovered from the car could have inflicted the fatal wound, that Baker had made inconsistent statements as to the location of the stab wounds which he inflicted, and had also stated that Francis didn't stab Haynan.

## DISCUSSION

### I. *Conviction as Both Principal and Accessory*

Defendant contends the trial court erred in failing to instruct the jury that he could not be convicted of both murder (Pen. Code, § 187) and accessory to that murder (Pen. Code, § 32).[4] He argues this error requires reversal of both convictions on appeal. The People expressly concede the multiple conviction was error but argue that the proper appellate remedy is to affirm the murder conviction and vacate the

---

[3]Suniga gave differing accounts of what was said by Francis and Baker regarding the stabbing incident. According to Suniga, both Francis and Baker admitted stabbing Haynan. However Suniga's descriptions of the location of the stab wounds inflicted respectively by the two men were inconsistent.

[4]Defendant did not request or offer any such instruction prior to the sanity trial. At the sanity trial he objected to the submission to the jury of the issue of sanity as to the accessory to murder count, on the grounds that defendant could not be found guilty of being a principal and accessory to the same murder. His motion to strike the verdict as to the accessory count was denied.

accessory conviction. Defendant relies upon *People* v. *Prado* (1977) 67 Cal.App.3d 267 [136 Cal.Rptr. 521].[5]

In *Prado*, the court held (at pp. 271-272) that one cannot be convicted both as a principal and as an accessory to a single completed felony. In reaching what is apparently the only decision in California on the subject, the court relied upon certain criminal law treatises and out-of-state decisions. In addition, the court analogized multiple conviction as principal and accessory to multiple conviction as thief and receiver of stolen property and followed the rule set forth in *People* v. *Jaramillo* (1976) 16 Cal.3d 752 [129 Cal.Rptr. 306, 548 P.2d 706], that except in special circumstances[6] a convicted thief may not be convicted of receiving the same property which was the subject of the theft. (See *Prado, supra,* 67 Cal.App.3d at pp. 271, 273, fn. 1.)

The court held the trial court had erred in charging the jury that the defendant could be convicted as both a principal and accessory and suggested the trial court should have instructed the jury to first consider the defendant's liability as a principal and only to consider his liability as an accessory if it found insufficient proof of the former. (*Id.,* at p. 273.)

We observe initially that defendant misreads *Prado.* In *Prado,* the appellate court did *not* reverse both convictions. At sentencing, the trial court dismissed the verdict of guilty as accessory as to codefendant Gonzalez and committed Gonzalez to the California Youth Authority upon his armed robbery conviction as a principal. (*Id.,* at p. 270.) Concluding the conviction as both principal and accessory was erroneous, the Court of Appeal reversed the judgment of conviction as to codefendant Gonzalez and, relying upon *People* v. *Jaramillo, supra,* 16 Cal.3d at page 760, authorized the prosecutor to reinstate both charges or, in

---

[5]The defendant also relies on *People* v. *Green* (1980) 27 Cal.3d 1, 67-74 [164 Cal.Rptr. 1, 609 P.2d 468] for the proposition that when a reviewing court cannot determine from the record upon which of alternate prosecution theories, some of which are legally correct and others legally incorrect, a particular verdict of guilty rests, the conviction cannot stand. The proposition is correct. (*Id.,* at p. 69.) But the rule does not purport to have any applicability to improprieties arising out of inconsistent allegedly multiple convictions. (See *id.,* at pp. 67-74.)

[6]In *Jaramillo,* the Supreme Court described two exceptions to the rule that a thief may not also be convicted of receiving the stolen property: where there is a complete divorcement between the theft and the subsequent receiving and where a conspiracy between the thief and the receiver is established. (16 Cal.3d at p. 759, fn. 8.)

the alternative, to seek reinstatement of the accessory conviction only. (*Prado, supra,* 67 Cal.App.3d at p. 277.) In any case, we conclude, for reasons set forth below, that the approach of the court in *Prado* to the issue of the proper form of appellate relief is incorrect and decline to follow that decision.

We agree with the court in *Prado,* however, that multiple conviction as principal and accessory (to the same completed offense) may be analogized to multiple conviction as thief and receiver (of the same stolen property)[7] and therefore begin our analysis with a review of the form of appellate relief afforded by our courts in the latter circumstance. (See *Prado, supra,* at pp. 271, 273, fn. 1.)

The dominant line of authority consists of cases in which the theft (or burglary) conviction has been affirmed and the receipt of stolen property conviction has been reversed upon the appellate court's determination that the theft conviction is error-free and supported by substantial evidence. (*People v. Jackson* (1978) 78 Cal.App.3d 533, 538-539, 542 [144 Cal.Rptr. 199]; *People v. Perez* (1974) 40 Cal.App.3d 795, 800-801 [115 Cal.Rptr. 405]; *People v. Lohman* (1970) 6 Cal.App.3d 760, 767-768, 770 [86 Cal.Rptr. 221]; *People v. Taylor* (1935) 4 Cal. App.2d 214, 218-219 [40 P.2d 870]; cf. *People v. Lawrence* (1980) 111 Cal.App.3d 630, 639 [169 Cal.Rptr. 245]; contra, *People v. Morales* (1968) 263 Cal.App.2d 211 [69 Cal.Rptr. 553]; see fn. 9, *infra.*) *Jaramillo,* upon which *Prado* purports to rely (67 Cal.App.3d at p. 274), sets forth precisely this standard.

In *Jaramillo* the defendant was convicted of the unlawful driving or taking of a vehicle (Veh. Code, § 10851) and receiving stolen property (Pen. Code, § 496, subd. 1). The defendant could have been convicted of Vehicle Code section 10851 based upon the jury's finding of an intent either to temporarily or permanently deprive the owner of possession. If the jury's finding had been the former, the additional conviction for receiving the same vehicle as stolen property could stand if there had been other evidence establishing the independent theft of the vehicle and the defendant's knowing receipt thereof. But if the jury's finding had been the latter, the multiple conviction violated the fundamental principle that one may not be convicted of stealing and receiving the same property. The record in *Jaramillo* did not disclose, however,

---

[7]Indeed some state courts have reasoned that a knowing receiver of stolen property is an accessory after the fact. (See 74 A.L.R.3d § 2[a] fn. 9, p. 565.)

which finding the jury had made; therefore the conviction of both Vehicle Code section 10851 and Penal Code section 496 could not stand. However, as an alternative to retrial on both counts, the court afforded the People the option of securing reinstatement of the conviction of Vehicle Code section 10851 and reversal of the conviction of Penal Code section 496. (*Jaramillo, supra*, 16 Cal.3d at p. 760.) In doing so the court stated (at p. 761, fn. 11): "There is no impropriety in the instant case under the Supreme Court decisions in affording to the People as an alternative to outright reversals the right to require that defendant stand convicted of a violation of Vehicle Code section 10851, as the record reflects substantial evidence in support of an error-free conviction of that offense."

The "Supreme Court decisions" to which the court referred in *Jaramillo* were *Heflin* v. *United States* (1959) 358 U.S. 415 [3 L.Ed.2d 407, 79 S.Ct. 451]; *Milanovich* v. *United States* (1961) 365 U.S. 551 [5 L.Ed.2d 773, 81 S.Ct. 728]; and *United States* v. *Gaddis* (1976) 424 U.S. 544 [47 L.Ed.2d 222, 96 S.Ct. 1023]. (See *Jaramillo, supra*, at p. 760, fn. 11.)

In *Heflin* v. *United States* the United States Supreme Court held that a defendant could not be convicted and cumulatively sentenced under federal statutes for both bank robbery and receiving the proceeds of the robbery. (358 U.S. at pp. 418-420, 422 [3 L.Ed.2d at pp. 409-410, 412].)

In *Milanovich* v. *United States* the Supreme Court reviewed a defendant's convictions under federal statutes for stealing and receiving the stolen currency. The court held that the trial court should have instructed the jury that a guilty verdict could be returned upon either but not both counts. (365 U.S. at pp. 554-555 [5 L.Ed.2d at p. 776].) Concluding that it was now impossible to say which verdict would have been returned by a jury so instructed, the court set aside both convictions. (*Id.*, at pp. 555-556 [5 L.Ed.2d at pp. 776-777].)

Foretelling the future direction of the court, Justice Clark opined in his dissenting opinion that "the rule suggested today is unheard of in our jurisprudence. For here the jury is invited to consider counts not factually inconsistent, and in such sequence as it chooses, with no more reason to convict on one rather than another except its election . . . ." (*Id.*, at p. 564 [5 L.Ed.2d at p. 781].)

Finally, in *United States* v. *Gaddis* the court reviewed the defendants' convictions under federal statutes of bank robbery and receiving the proceeds of the robbery. The court reaffirmed its ruling in *Heflin* that such convictions were improper and noted that under *Heflin* and *Milanovich* the jury should have been instructed that they could not convict the defendants of both bank robbery and of receiving the proceeds of the robbery. The court specifically held for the first time, however, that the jury should be instructed that they "must first consider the [robbery] charges . . . and should consider the [receiving] charge . . . only if they find insufficient proof that the defendant himself was a participant in the robbery." (424 U.S. at p. 550 [47 L.Ed.2d at p. 229].) Finding that the evidence was sufficient to support the bank robbery verdicts the court chose "the simple expedient" of vacating the convictions and sentences for receiving. (*Id.*, at p. 549 [47 L.Ed.2d at p. 228].) In his concurring opinion Justice White explained the logic behind the majority's "simple expedient:"

"[A] jury, having convicted on the robbery count, should stop there without going on to consider the possession [receiving] count. If the jury is erroneously permitted, however, to consider and convict on the possession count as well, such a conviction casts absolutely no doubt on the validity of the robbery conviction. Under such circumstances it is not impossible to say upon which count, if either, a properly instructed jury would have convicted the defendant. It may be concluded with satisfactory certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed. The verdict on the robbery count shows that the jury found each element of that offense to have been established beyond a reasonable doubt. That the jury went on to find that the defendant also possessed the proceeds of the robbery . . . casts no doubt on the trustworthiness of the findings on the robbery count. . . . [T]he robbery count is untainted by the fact that in addition to its finding of guilty on that count the jury also made findings on the possession count, for those findings are factually consistent with the findings on the robbery count.

". . . A new trial on the robbery count in any such case would result in an expenditure of court resources and the possibility of an acquittal —through loss of evidence or other causes—of a reliably convicted defendant for no reason." (*Id.*, at pp. 551-553 [47 L.Ed.2d at pp. 229-230].)

Thus, the decisions of the United States and California Supreme Courts as well as the line of Court of Appeal decisions cited earlier provide authority, logic, and reason for a rule remedying any impropriety of multiple conviction as principal and accessory in those cases in which the former conviction is error-free and supported by substantial evidence by affirming the former conviction and vacating the latter.[8]

This rule is not inconsistent with the decision of the California Supreme Court in *Jaramillo.* There, the court was required to reverse the conviction of Vehicle Code section 10851, subject to reinstatement upon motion of the People only because the record did not disclose whether the Vehicle Code section 10851 verdict was based upon a finding of theft or not. (See also *People* v. *Briggs* (1971) 19 Cal.App.3d 1034 [97 Cal.Rptr. 372].)

*Prado,* however, reached a different conclusion as to the appropriate form of appellate relief. Having determined that the trial court erred in failing to instruct the jury to first consider the defendant's liability as a principal and only to consider his liability as an accessory if it found insufficient proof of his guilt as a principal, the court then considered Justice White's concurring opinion in *Gaddis.* (See *Prado, supra,* 67 Cal.App.3d at pp. 273-274.) The court in *Prado* concluded that satisfactory evidence that the jury would have convicted the defendant as a principal, had they been properly instructed, did not appear "from the facts of this case." (*Prado, supra,* at p. 274.)

The analysis of the court in *Prado* reflects a misreading of Justice White's opinion. As set forth in pertinent part above, Justice White's conclusion, arrived at "with satisfactory certainty" that had the jury been properly instructed, it would have convicted the defendants only of robbery, was not based upon any review of the evidence; rather, his conclusion was a logical deduction based upon the jury's verdicts of guilt as to robbery and the fact that proper instructions would have required the jury to consider the receiving charges only if it did not find the defendants guilty of robbery.

The court in *Prado* appears to have assumed, without citation of any authority, that convictions as both principal and accessory are mutually

---

[8]In a case decided prior to the United States Supreme Court's retreat from *Milanovich* in *Gaddis* the Court of Appeal relied solely on *Milanovich* in reversing convictions for larceny as well as for receiving. (*People* v. *Morales, supra,* 263 Cal.App.2d 211.)

exclusive or inconsistent,[9] and, therefore, to have examined the admitted evidence in an effort to ascertain at which conviction, if either, the jury would have arrived if so instructed. However, the offenses of robbery and accessory to robbery, like the offenses of murder and accessory to murder as in the present case, are not mutually exclusive or inconsistent. Though the offenses are distinct and different, the elements of the crime of murder are not inconsistent with the elements of the crime of accessory to murder. One guilty of the former is not necessarily not guilty of the latter or vice-versa. If, as the People here concede, a defendant may not be convicted as both a principal and as an accessory to the same offense absent exceptional circumstances, it is not because the elements of the two offenses are inconsistent, but because the Legislature, in proscribing the conduct of an accessory to a felony, did not intend to embrace such conduct of the principal felon. (Cf. *Heflin* v. *United States, supra*, 358 U.S. at pp. 419-420 [3 L.Ed.2d at p. 410]; *Jaramillo, supra*, 16 Cal.3d at p. 758.)

We earlier observed that the court in *Prado*, relying on *Jaramillo*, offered the prosecution the option of reinstating judgment and conviction on the accessory count as an alternative to retrial on both counts. (*Prado, supra*, 67 Cal.App.3d at p. 277.) In *Jaramillo*, as we have noted, the Supreme Court offered the prosecution the option of reinstatement of the theft (or taking) conviction, not the receiving conviction. (*Jaramillo, supra*, 16 Cal.3d at p. 760.) We can therefore discern neither logic nor precedent to support the form of relief afforded in *Prado*.

The defendant herein does not dispute that there is substantial evidence to support the guilty verdict as to first degree murder. After independent review of the record we so conclude. Inasmuch as we subsequently reject defendant's other two asserted grounds of error affecting the murder verdict and determine said verdict to be error-free, it is our conclusion, for the foregoing reasons, that the judgment of

---

[9]Thus, the *Prado* court stated (67 Cal.App.3d at p. 273): "His state of mind—the intent required to be an accessory after the fact—excludes that intent and state of mind required to be a principal. The requisite intent to be a principal in a robbery is to permanently deprive the owner of his property. Thus, this is a totally different and distinct state of mind from that of the accused whose intent is to aid the robber to escape. These are mutually exclusive states of mind and give rise to mutually exclusive offenses." Later (at p. 274), the court referred to "these inconsistent convictions."

commitment based upon said verdict should be affirmed; the accessory conviction will be ordered vacated.[10]

## II. *Hearsay Declarations*

■ Defendant contends that four statements[11] made by the victim Haynan to Riley and the deputy sheriff were improperly admitted into evidence under the spontaneous declaration exception to the hearsay rule. (Evid. Code, § 1240.)[12] He grounds his contention on the assertion that the statements were made in a calm manner and after a significant lapse of time following the stabbing.[13]

■ The elements necessary to create the spontaneous declaration exception are: (1) there must be some occurrence startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been made before there has been time to contrive and misrepresent, i.e., while the nervous excitement still dominates and the reflective powers are in abeyance; and (3)

---

[10]Since we order the trial court to vacate defendant's conviction under Penal Code section 32, we need not address defendant's further contentions that: (1) there was no territorial jurisdiction of the accessory offense in Yolo County, and (2) that he was improperly denied presentence conduct credit on the accessory sentence.

[11]The statements are: (1) That he had been stabbed in the back and stomach; (2) that the stabbing was committed by Francis; (3) "Take me to a hospital"; and (41) "Hurry, hurry, hurry."

[12]Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement:

"(a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and

"(b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

[13]Two of the four statements were admissible whether or not they constituted spontaneous declarations under Evidence Code section 1240. The statements "Take me to the hospital" and "Hurry, hurry, hurry" if hearsay because offered to prove the truth of the implied statement that Haynan needed to be taken immediately to the hospital, were admissible under Evidence Code sections 1250, subdivision (a), and 1252 as statements of Haynan's then existing physical state.

Evidence Code section 1250, subdivision (a), provides: "Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain or bodily health) is not made inadmissible by the hearsay rule when:

"(1) the evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or

"(2) the evidence is offered to prove or explain acts or conduct of the declarant."

Evidence Code section 1252 provides: "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness."

the utterance must relate to the circumstances of the occurrence preceding it. (*Showalter* v. *Western Pacific R. R. Co.* (1940) 16 Cal.2d 460, 468 [160 P.2d 895].) "Neither lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance." (*People* v. *Washington* (1969) 71 Cal.2d 1170, 1176 [81 Cal.Rptr. 5, 459 P.2d 259, 39 A.L.R.3d 541].) In determining the existence of the essential elements of admissibility, some discretion is necessarily vested in the trial judge, particularly with respect to the requirement that the statement be made while declarant was still under emotional distress. (*Showalter* v. *Western Pacific R. R. Co., supra*, 16 Cal.2d at pp. 468-469; *Ungefug* v. *D'Ambrosia* (1967) 250 Cal.App.2d 61, 67 [58 Cal.Rptr. 223].)

▮ Applying these rules, we cannot say the trial court abused its discretion. The declarations were all made within approximately 20 minutes of the stabbing, precluding the likelihood of reflection and fabrication. Moreover, Haynan's badly wounded condition and profuse bleeding suggest he was talking under circumstances of physical and emotional stress and shock, rather than reflection. Though the declarations were made in a calm manner, this does not necessarily indicate a lack of spontaneity. As the trial court concluded after a full review of the evidence, Haynan's apparent calmness was "obviously a superficial and bizarre manifestation of shock."

Defendant relies on *People* v. *Keelin* (1955) 136 Cal.App.2d 860 [289 P.2d 520, 56 A.L.R.2d 355]. The case is clearly distinguishable. There, it was held (at pp. 870-871) that the trial court erred in admitting certain purported spontaneous declarations without first conducting a hearing on their admissibility. Here, the trial court conducted an extensive pretrial hearing on the issue including oral argument and the submission of trial briefs by both counsel. Furthermore, the declarations in *Keelin*, unlike those at issue here, were made over a considerable period of time of up to three hours after the incident and included self-serving statements that the declarant had been falsely accused of robbery, all of which led to the appellate court's conclusion that the statements evidenced reflection and opportunity for fabrication. (*Ibid.*) In this case, the trial court concluded the opposite and did not abuse its discretion in ordering Haynan's statements admitted.

### III. *Jury Instructions*

█ The trial court instructed the jury in accord with CALJIC Nos. 3.00, 3.01 and 8.27 (4th ed. 1979)[14] that defendant might be found guilty of murder if he, with knowledge of Baker's unlawful purpose, aided, promoted, encouraged, or instigated the commission of robbery or murder. Defendant contends these instructions were deficient because they did not require the jury to find that by his acts or advice he *specifically intended* to aid Baker in either the robbery or murder.

The defendant relies on *People* v. *Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875]. There, the court suggested (at pp. 912-917) that one is guilty of aiding and abetting the commission of a crime only if, by acts or advice, one aids, promotes, encourages, or instigates its commission with the intent to aid the perpetrator in its commission. Other cases have concluded that defendant's knowledge of the wrongful purpose of the perpetrator is sufficient. (See *People* v. *Terry* (1970) 2 Cal.3d 362, 401 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Beeman* (1981) 126 Cal.App.3d 749 [179 Cal.Rptr. 100]; *People* v. *Vernon* (1979) 89 Cal.App.3d 853, 869 [152 Cal.Rptr. 765]; *People* v. *Ott* (1978) 84 Cal.App.3d 118, 130 [148 Cal.Rptr. 479]; *People* v. *Standi-*

---

[14]CALJIC No. 3.00 (4th ed. 1979) defines principals as: "The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include:

"1. Those who directly and actively commit or attempt to commit the act constituting the crime, or

"2. Those who, with knowledge of the unlawful purpose of the one who does directly and actively commit or attempt to commit the crime, aid and abet in its commission or attempted commission, or

"3. Those who, whether present or not at the commission or attempted commission of the crime, advise and encourage its commission or attempted commission.

"[One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.]"

CALJIC No. 3.01 (4th ed. 1979) defines aiding and abetting as: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime he aids, promotes, encourages or instigates by act or advice the commission of such crime. [Mere presence at the scene of a crime and failure to take steps to prevent a crime do not in themselves establish aiding and abetting.]"

CALJIC No. 8.27 (4th ed. 1979) defines aiding and abetting in the context of first degree felony (robbery) murder as: "If a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of [robbery], all persons who either directly or actively commit the act constituting such crime or who with knowledge of the unlawful purpose of the perpetrator of the crime aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

*fer* (1974) 38 Cal.App.3d 733, 734 [113 Cal.Rptr. 653].) But the holding of *Yarber* was more limited; the court held that an alleged aider and abettor must be shown to have had the intent to aid the perpetrator only where a reasonable inference can be drawn from the evidence that despite defendant's knowledge of the perpetrator's wrongful purpose, defendant acted for an independent, lawful purpose. (*People v. Yarber, supra*, 90 Cal.App.3d at pp. 916-917.)[15] Here, the only inferences that can reasonably be drawn from defendant's role in the robbery-murder are either that he acted to personally commit the crime, or with the intent to aid Baker's criminal objective. There is no evidence suggesting that he acted pursuant to some independent lawful purpose. Under the circumstances of this case, the trial court properly instructed the jury on the elements of aiding and abetting.

The judgment of commitment based upon the murder verdict is affirmed. The judgment of conviction of accessory (Pen. Code, § 32) is vacated.

Evans, Acting P. J., and Reynoso, J.,* concurred.

A petition for a rehearing was denied March 24, 1982, and the opinion was modified to read as printed above.

---

[15]"In the absence of evidence to the contrary, the intent may be regarded as established. But where a contrary inference is reasonable—where there is reason for doubt that a person intended to aid a perpetrator—his knowledge of the perpetrator's purpose will not suffice." (*Yarber, supra*, at p. 916.) "The lead opinion appears to hold that in the absence of evidence to the contrary, intent to aid and abet may be inferred from a person's action with knowledge of the purpose of the perpetrator of a crime. But where a contrary inference is reasonable his knowledge of the perpetrator's purpose will not suffice and intent must be proved by other evidence." (*Id., supra*, at p. 917 (conc. opn.).)

*Assigned by the Chairperson of the Judicial Council.