Filed 6/26/23  P. v. Meza CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095954 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE013350) |
| v. | |
| JOSE MEZA, | |
| Defendant and Appellant. | |

A jury found defendant Jose Meza guilty of multiple incidents of corporal injury on Y.D., a person he was dating and the mother of his two children.  (Pen. Code, § 273.5, subd. (a); undesignated statutory references are to the Penal Code.)  The prosecution's evidence regarding one incident on August 9, 2020, charged in count three, included a recording of a 911 call by a witness Y.D. flagged down on the street when defendant was chasing her.  The witness, Marques Marzetta, did not testify at trial.  Defendant contends the trial court erred in admitting the 911 call under the spontaneous utterance exception to

1

the hearsay rule (Evid. Code, § 1240) and asserts his conviction on count three therefore must be reversed. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Y.D. were in a romantic relationship for 16 years and had two children together.[1]

On August 9, 2020, at around 8:00 a.m., Y.D. and defendant got into an argument that turned physical. Y.D. ran into the street, flagged down a passing car, and told the driver (Marzetta) who stopped that defendant had hit her. Marzetta called 911.

The 911 call at around 12:30 p.m. was recorded. The recording was played to the jury and admitted into evidence.

In the recording, the operator asked: "Okay, are you with her, or are you just seeing this?" Marzetta answered: "Yeah, uh, I was driving literally up the street, and she was just running from him. Um, and then now I see him, like as soon as, me and another gentleman, and then as soon as we pulled up he kind of just jetted off, but she does have a, uh, a mark on her head, and she does like have a big scratch on her head."

The operator asked how old she looked. Marzetta did not at first answer the question but said instead: "Um, yeah, uh, it's a pretty volatile situation so, can you guys get here pretty quickly." The operator assured him they would and then Marzetta added: "But looks about maybe twenty, 27-ish, 28." The operator asked: "Okay. And who was chasing her?" Marzetta answered: "Another gentleman. I'm not too sure exactly who it was. I kind of seen the aftermath of her like running across the street, and I—I kind of pulled aside to make sure she was okay." He added: "Um, and then once I did that he kind of just jetted off." The operator asked for a more detailed description of Y.D. and Marzetta answered: "Hispanic, short, um, black hair, blue jeans, and, uh, a dark blue

---

[1] We limit our summary of the facts and evidence to those relevant to the August 9, 2020, incident.

shirt.  And she has a bandage wrapped around on her arm."  The operator asked if Y.D. wanted paramedics to come, Marzetta asked Y.D., and then he responded:  "Yeah, yeah she has, yeah she has that mark on her head that is pretty bad, yeah."

The operator asked a series of questions about defendant's appearance and his whereabouts and then connected Marzetta to a paramedics' dispatcher.  The dispatcher asked if Y.D. was awake and breathing, and Marzetta answered:  "She's breathing.  She is pretty alert too.  Um, it just looks like it might have been an ongoing situation.  So, she has like a big gash on her forehead, um, and then her—her elbow seems to be pretty beaten up, . . . may be [*sic*] dislocated.  Um, I can see like her hands is kind of changing a couple colors there, so."  When asked "is the assailant still nearby," Marzetta responded, "No.  Once I, uh, pulled aside, um, he kind of just ran off."

A sheriff's deputy was dispatched to the scene and recorded Y.D.'s statement at about 12:30 p.m.  The recording was played to the jury and admitted as evidence.  In the recording, Y.D. told the deputy that she and defendant were arguing, and he punched her in the head, hit her in the elbow with a board from the cabinet, and threw a lighter that hit her in the head.  When defendant threw a printer that broke the TV in the living room, she walked outside.  Defendant followed her and hit her with his fist when she would not come back inside.  Y.D. stopped a vehicle so defendant would not do it again and defendant took off.

On February 18, 2022, defendant called Y.D. from jail.  A recording of the call was played for the jury and admitted into evidence.  In the course of the call, Y.D. and defendant discussed the August 9, 2020, incident, "[t]he day you threw [the] lighter and with my hand."  They agreed that Y.D. should say that her hand was injured when she got drunk the night before or when she punched defendant.

At trial, Y.D. testified that she asked defendant for his lighter to smoke a cigarette and he tossed it to her while she wasn't looking, hitting her in the head, which started bleeding.  After defendant broke the TV, she went outside, flagged down a passing car,

3

and told the driver defendant hit her. Y.D. wanted to have defendant arrested because she was angry. She told police that defendant hit her with a board on the arm, but that injury happened the night before when she was drinking.

The jury found defendant guilty of three counts of infliction of corporal injury on Y.D. (§ 273.5, subd. (a)) based on incidents occurring June 4, 2020, August 9, 2020, and October 23, 2021, and one count of resisting a peace officer (§ 148, subd. (a)(1)). The trial court sentenced defendant to a total of six years eight months in state prison on the corporal injury counts, plus two years consecutive in state prison for an on-bail enhancement (§ 12022.1, subd. (b)), and six months concurrent in county jail on the resisting a peace officer count, for an aggregate sentence of eight years eight months.

Defendant timely appealed.

## DISCUSSION

Defendant contends his conviction based on the August 9, 2020, incident must be reversed, because the trial court erred in admitting the 911 call under Evidence Code section 1240. Defendant argues there was no evidence that Marzetta was "so stressed" by observing Y.D. running away from defendant or viewing her injuries that Marzetta's "responses to the 911 dispatcher's questions were unreflecting, spontaneous statements."

Evidence Code section 1240 provides that a statement is not inadmissible under the hearsay rule if it (a) purports to narrate, describe or explain an act, condition or event perceived by the declarant, and (b) the statement was made spontaneously while the declarant was under the stress of excitement caused by such perception. In order to meet the standards for the spontaneous declaration exception to the hearsay rule, " '(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed to still dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' " (*People v.*

4

*Poggi* (1988) 45 Cal.3d 306, 318 (*Poggi*), quoting *Showalter v. Western Pacific P.R. Co.* (1940) 16 Cal.2d 460, 468.)

We review the trial court's ruling for abuse of discretion. (*People v. Liggins* (2020) 53 Cal.App.5th 55, 61.) "Any preliminary factfinding undertaken to determine whether the requisite elements of the spontaneous statement exception have been met will be upheld if supported by substantial evidence." (*Ibid.*)

Here, the court's ruling reflects careful consideration of the scope of the exception. The People filed a motion in limine to admit the 911 call and defendant filed an opposing motion to exclude it unless Marzetta testified. The trial court ruled that the 911 call fell within Evidence Code section 1240, but not all of it, and directed the parties to work together on redactions. On the first day of trial, defense counsel told the court the parties had agreed on some redactions, but the defense continued to maintain that the call should be excluded unless Marzetta testified. The court agreed with defense counsel that portions of the original transcript referring to matters that Y.D. told Marzetta—such as the events leading to Y.D.'s injuries, as opposed to what he witnessed—should not be included.

We agree with the People that the trial court did not abuse its discretion in admitting the 911 call under Evidence Code section 1240 based on the factors outlined by the California Supreme Court in *Poggi*: (1) an injured woman running into the street to stop a car passing by while being chased by a man was a startling occurrence; (2) Marzetta made the call right after pulling over to aid Y.D.; and (3) the call (as redacted) related to Y.D.'s flight and the injuries that Marzetta perceived. (See *Poggi, supra*, 45 Cal.3d at p. 318.)

However, defendant offers four reasons why the 911 call does not qualify as a spontaneous utterance. First, defendant argues Marzetta was not the victim of a violent crime, nor was there anything indicating Marzetta's physical condition inhibited his deliberation. However, Evidence Code section 1240 does not require that the declarant

5

sustain an injury as a victim or otherwise, but allows admission if the declarant perceives an event startling enough to produce nervous excitement and render the utterances spontaneous and unreflecting. (*People v. Phillips* (2000) 22 Cal.4th 226, 235.) This standard applies to an uninjured witness as much as a victim.

Defendant asserts that Marzetta did not perceive a sufficiently startling event but only Y.D. running across the street and not the violence that led to her flight. Defendant also argues that Y.D.'s injuries were not sufficiently severe to produce nervous excitement that would render his utterances spontaneous and unreflecting. We disagree. Being stopped while driving by a frantic pedestrian is startling enough. In this case, the pedestrian was a woman being chased by a man who fled when Marzetta stopped. Upon stopping, Marzetta perceived that Y.D. had a "big gash" on her head and other injuries sufficiently serious that paramedics were called. Further, when the 911 operator asked how old Y.D. was, Marzetta did not respond to the question but interjected "it's a pretty volatile situation so, can you guys get here pretty quickly," reflecting the disturbing effect on Marzetta's mental state of what he witnessed. (*People v. Liggins, supra*, 53 Cal.App.5th at p. 63 [" ' "The crucial element in determining whether a declaration is sufficiently reliable to be admissible under [the spontaneous statement] exception to the hearsay rule is . . . not the nature of the statement but mental state of the speaker" ' "].)

Third, defendant asserts that the exception does not apply because Marzetta's statements were made in response to the 911 operator's questions, indicating they were the product of deliberation and not a reflexive response. However, "the fact that the statements were delivered in response to questioning does not render them nonspontaneous." (*Poggi, supra*, 45 Cal.3d at pp. 319-320.) Moreover, if this were a factor sufficient to disqualify a statement from the exception, all 911 calls—which typically begin with a question regarding the nature of the emergency, as here—would be excluded. The opposite is the case. (See *People v. Roybal* (1998) 19 Cal.4th 481, 516; *People v. Brenn* (2007) 152 Cal.App.4th 166, 171-173; *People v. Corella* (2004)

6

122 Cal.App.4th 461, 466.) Further, Marzetta responded to the operator's general, nonsuggestive questions, "are you with her, did you just see this," by describing with no additional prompting how he encountered Y.D. when she stopped him while running from defendant, and the injury to her head he saw when he stopped. In short, this was not an interrogation and the operator's questions did not elicit a deliberative response.

Fourth, defendant claims that Marzetta was not sufficiently excited or distressed because "his voice sounds totally calm on the recording of the 911 call" in responding to the operator's questions. Even if this reasonably described Marzetta's tone of voice, it does not mean he lacked the nervous excitement required for the exception. "[T]he fact that [a] declarant has become calm enough to speak coherently . . . is not inconsistent with spontaneity." (*Poggi, supra*, 45 Cal.3d at p. 319; *People v. Francis* (1982) 129 Cal.App.3d 241, 254 ["Though the declarations were made in a calm manner, this does not necessarily indicate a lack of spontaneity"].) Marzetta's effort to answer the 911 operator's questions in a calm tone of voice indicates nothing more than his attempt to cooperate with law enforcement in a stressful situation. Moreover, his comment that "it's a pretty volatile situation" does not suggest that he was calm.

We conclude the trial court did not err in admitting the 911 call under the spontaneous utterance exception to the hearsay rule.[2]

---

[2] Because we find no error in admitting the 911 call under Evidence Code section 1240, we need not address the People's arguments that the call was admissible under Evidence Code section 1241 as a contemporaneous statement, or that, if the trial court committed error in admitting the 911 call, it was harmless.

7

## DISPOSITION

The judgment is affirmed.

/s/

EARL, J.

We concur:

/s/

ROBIE, Acting P. J.

/s/

KRAUSE, J.