Filed 10/29/25  P. v. Vincent CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHANCE ANDRE VINCENT,<br><br>　　　　Defendant and Appellant. | C100826<br><br>(Super. Ct. Nos. 22CF05075<br>& 22CF04351) |

Defendant Chance Andre Vincent appeals his convictions related to two stabbings and an assault on a correctional officer.  His appointed counsel asked this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Defendant filed a supplemental brief arguing the trial court erred in precluding him from cross-examining a witness.

This court requested supplemental briefing on:  (1) "[w]hether the trial court erred in admitting evidence regarding A.L.'s [1] statement while he was in the ambulance describing the stabber," and whether "any error was prejudicial" and (2) "[w]hether the

---

[1]　To protect their privacy, we will refer to the victims by their initials.  (Cal. Rules of Court, rule 8.90(b)(4).)

trial court erred in admitting evidence regarding Officer Nicolo DiStefano's interview of [defendant] on September 4, 2022," and whether "any error was prejudicial."

Having reviewed the supplemental briefing filed by defendant himself, his appellate counsel, and the People, as well as the record as required by *Wende,* we will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In Butte County Superior Court Case No. 22CF04351 (case No. 4351), defendant was charged with two counts of assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1); counts 1 and 2) with a great bodily injury enhancement on each count (§ 12022.7, subd. (a)).

In Butte County Superior Court Case No. 22CF05075 (case No. 5075), defendant was charged with battery on a custodial officer (§ 243.1; count 1) and resisting an executive officer (§ 69, subd. (a); count 2).

In April 2023, defendant pleaded no contest to all the charges in both cases and admitted both enhancements. In exchange, defendant would receive a suspended sentence of 11 years, eight months, and be allowed to complete a substance abuse treatment program.

In June 2023, defendant withdrew his no-contest pleas in both cases. The trial court denied the prosecution's motion to consolidate the cases for trial and subsequent motion to reconsider the denial.

A.      *Motions In Limine and Trial in Case No. 4351*

During the January and February 2024 jury trial in case No. 4351, the trial court became aware that one of the jurors was the mother of one of the trial court clerk supervisors. With counsels' agreement, the court admonished the juror that it was

---

[2]      Undesignated section references are to the Penal Code.

2

important not to talk about the case with anyone, including family, and the juror agreed to comply.

J.E. testified that on September 2, 2022, defendant stabbed him in the back with a knife. J.E. suffered a collapsed lung and needed a chest tube for four days.

A second man, later identified as A.L., was stabbed on September 4, 2022, at a train station. Although A.L. did not testify at trial, the prosecution sought to introduce testimony from a responding police officer detailing two interactions with A.L. after the stabbing. The prosecution argued A.L.'s statements during these interactions were admissible as spontaneous statements. (Evid. Code, § 1240.)

Defendant objected, asking for a hearing pursuant to Evidence Code section 402 for any statement from a non-testifying witness. Defendant argued that admitting any testimonial hearsay statement from an unavailable witness would violate his Sixth Amendment right to confront and cross-examine the declarant.

The prosecution also sought to introduce testimony from a responding police officer regarding statements made by defendant after the stabbing, including part of a recorded interview with the officer at the police station.

The trial court held hearings pursuant to Evidence Code section 402 to determine whether the challenged testimony was admissible.

<blockquote>1.  <em>Evidence Code Section 402 Hearing Regarding Defendant's Statements to Officer Nicolo DiStefano</em></blockquote>

The first Evidence Code section 402 hearing was regarding Officer Nicolo DiStefano's interview of defendant on September 4, 2022. Officer DiStefano arrested and handcuffed defendant and read defendant his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) while defendant was sitting inside his patrol car. Although Officer DiStefano did not repeat exactly what he told defendant, he recalled that he had relied on a department-issued card when reading defendant his rights. After defendant was read his rights, he responded, "yeah." Officer DiStefano asked defendant

3

a few questions and then transported him to the police station and placed him in an interview room. Once in the interview room, Officer DiStefano asked defendant if he remembered their conversation about his rights, and defendant nodded. Officer DiStefano and a second officer proceeded to ask defendant questions. Defendant never indicated he wanted to invoke his right to remain silent or ask for an attorney. According to Officer DiStefano, the questioning at the police station took place less than an hour after the questioning in the police car.

The trial court watched a video of the interview conducted at the police station. Defendant asked that the video be stricken, arguing defendant had not been properly advised of his rights "a second time" while at the police station. Defendant noted that, although he had been read his *Miranda* rights "on the scene," there was a break before the second police interview at the police station. Defendant had been transported to the station, processed, "put into orange gear," handcuffed, and "put in a small room with two officers." Defendant further noted that the officer at the police station did not specify "what kind of rights" he remembered before proceeding with the interview. When the trial court mentioned that defendant likely had "some familiarity" with law enforcement, defendant acknowledged his criminal history but argued that "d[id] not mean he had ever been in a situation where he is in custody, handcuffed, and . . . interrogated."

The trial court admitted the interview, finding that defendant had been orally advised of his rights while in the police car and reminded of them before the officers interviewed him at the police station.

2. *Evidence Code Section 402 Hearing Regarding A.L.'s Statements to Responding Officers*

The second Evidence Code section 402 hearing was regarding Officer Joel Gist's interactions with A.L. after the stabbing. When Officer Gist arrived at the scene, A.L. was sitting on the sidewalk with a pool of blood around him; the attacker was nowhere in sight. Other officers were already there, and the paramedics had just arrived. A.L.

4

appeared to be in distress and was only talking "somewhat." He moaned "a lot" and thought he was going to die. Officer Gist tried to ask him questions, but A.L. was "not very responsive." The paramedics quickly loaded A.L. onto a gurney and then into an ambulance.

While A.L. was in the back of the ambulance, Officer Gist overheard another responding officer (Sergeant Durfee) ask A.L. for "some information." When A.L. did not respond, Sergeant Durfee asked A.L. what the attacker looked like, specifically asking about the attacker's race, hairstyle, and clothing. A.L. responded that the attacker was male, Caucasian, bald, and wearing a white t-shirt. Sergeant Durfee then "put that description out on the radio."

The ambulance then took A.L. to a nearby hospital, and Officer Gist followed behind. About 30 minutes after A.L. got to the hospital, Officer Gist showed him a photo of defendant, and he identified defendant as the attacker. According to Officer Gist, in that moment, A.L. was "more focused" and "cogent." A.L. said he was afraid he was going to die. Officer Gist later tried to ask A.L. more questions, but A.L. was uncooperative.

Contrary to Officer Gist's testimony, a video from Officer Gist's body camera recording his interactions with A.L. showed A.L. as "pretty calm." He was not yelling or screaming, and he was "able to answer questions in a calm, rational manner."

The trial court held that A.L.'s statement, while he was in the ambulance describing the attacker, was admissible hearsay as a spontaneous statement under Evidence Code section 1240. The court reasoned that the statement was made "short[ly]" after law enforcement arrived at the scene, during a brief interaction with Sergeant Durfee. While A.L. seemed calm in the video, he was experiencing "severe" medical trauma from multiple stab wounds, which would "inhibit any sort of deliberation or attempt to mislead or deceive." The court further found that the statement did not violate the confrontation clause because it was not testimonial. (See *Crawford v. Washington*

5

(2004) 541 U.S. 36.)  The court reasoned the statement was contemporaneous to the stabbing, and police were still trying to find a suspect.  In addition, the court rejected defendant's argument that the statement was more prejudicial than probative, pursuant to Evidence Code section 352.

However, the trial court held, A.L.'s statement to Officer Gist at the hospital identifying defendant as the attacker was testimonial and was not admissible as a spontaneous statement.

### 3.     *Testimony Before the Jury and Verdicts*

With the jury present, Officer DiStefano testified that he arrived at the scene of the second stabbing at around 6:00 a.m. on September 4, 2022.  After initially attending to A.L., Officer DiStefano went to a nearby park where other officers had found defendant. With the help of a second officer, Officer DiStefano arrested defendant and moved him to a patrol car.  Officer DiStefano read defendant his *Miranda* rights, and defendant responded, "yeah" to confirm he understood.

Officer DiStefano transported defendant to the police station, where defendant told Officer DiStefano that he and A.L. had argued because defendant thought A.L. had taken defendant's backpack.  Defendant did not admit to any physical altercation with A.L.  A video recording of Officer DiStefano's interview of defendant at the police station was played for the jury.

During Officer Gist's testimony, the jury was shown photos that Officer Gist took, including one showing A.L. lying on the ground in a pool of blood and another showing a stab wound on the right side of A.L.'s back.  The jury was also shown a video recording from Officer Gist's body camera when A.L. described his attacker.

Officer Shane Carpenter testified that he responded to a park next to the train station at around 6:00 a.m. on September 4, 2022, to search for the attacker.  He found defendant and three other people in a tent.  Just behind where defendant was sitting was a white t-shirt, and under the t-shirt was a knife with blood on it.  Subsequent laboratory

6

testing found blood on the t-shirt and knife, and DNA testing found what was likely A.L.'s blood on the knife and defendant's DNA on the knife handle. The testing also found what was likely defendant's blood on the t-shirt.

A trauma surgeon testified that he treated A.L. on September 4, 2022, for multiple stab wounds. A.L. had a "large" amount of blood in his chest and required surgery and a chest tube to drain the blood. Overall, he lost two quarts of blood, or one-third of his total blood volume. A.L. also suffered a collapsed lung. His injuries were potentially fatal without treatment. A.L. tested positive for methamphetamine, cannabis, and opiates. He was also diagnosed with schizophrenia.

Over defendant's objection, the trial court instructed the jury with CALCRIM No. 362 (consciousness of guilt: false statements). The prosecution asked for this instruction because defendant denied assaulting A.L. when Officer DiStefano interviewed him at the police station. The jury was also instructed on the lesser included offense of simple assault and specific intent.

The jury found defendant guilty as charged and found the enhancements to be true.

B. *Trial in Case No. 5075*

In case No. 5075, in February 2024, at the prosecutor's request, the trial court dismissed count 2, resisting an executive officer.

During the February 2024 jury trial, Correctional Deputy Donovan Stockwell testified that he was working as a correctional officer at the county jail on September 8, 2022, in the transportation division. When Deputy Stockwell initially approached defendant about being transported that day, defendant was "very calm," "very compliant," and "very lucid." Deputy Stockwell opened defendant's cell door and ordered him to step out and face the wall so Deputy Stockwell could secure him for transport. Defendant complied, and Deputy Stockwell started to secure waist restraints on defendant. But, when Deputy Stockwell tried to handcuff him, defendant suddenly pivoted off the wall and hit Deputy Stockwell in the face with a closed fist. With the

7

assistance of other officers, Deputy Stockwell was able to subdue defendant and restrain him. Both Deputy Stockwell and defendant declined medical assistance. Surveillance video showing the incident was played for the jury.

In addition to instructing the jury on battery against a custodial officer, the trial court also instructed on the lesser included offense of simple assault. Over defendant's objection, the court declined to instruct the jury regarding self-defense (CALCRIM No. 3470).

The jury found defendant guilty of battery on a custodial officer.

C.      *Sentencing*

The original May 2023 probation report noted defendant did not have a history of mental illness but received counseling for substance use disorder. His criminal history included a 2017 conviction for misdemeanor battery (§ 242) and misdemeanor theft (§ 490.5), a 2017 conviction for felony unlawfully causing a fire (§ 452, subd. (c)), a 2018 conviction for felony unlawfully causing a fire, four 2019 convictions for felony unlawfully causing a fire, a 2021 conviction for felony vehicle theft (Veh. Code, § 10851, subd. (a)), a 2021 conviction for felony assault with a deadly weapon (§ 245, subd. (a)(4)), and a 2021 conviction for felony unlawful possession of ammunition (§ 30305, subd. (a)(1)).

A March 2024 supplemental probation report noted that, in May 2023, the probation department sent the trial court a certified record of defendant's criminal history. The report also noted that, as of March 21, 2024, defendant was entitled to 649 days of custody credit.

During the March 2024 sentencing hearing, the parties stipulated to the accuracy of the original probation report and the supplemental probation report's description of defendant's criminal history. The prosecution asked the trial court to impose the upper term.

8

The trial court instead sentenced defendant to eight years and eight months in prison, as follows:  (1) in case No. 4351 three years (the middle term) for count 1 plus three years for the great bodily injury enhancement; one year consecutive (one-third the middle term) for count 2 plus one year consecutive (one-third the term) for the great bodily injury enhancement; and (2) in case No. 5075 eight months consecutive (one-third the middle term) for count 1.  The court also ordered defendant to serve 180 days concurrently in a case not at issue in this appeal.

The trial court imposed a $300 restitution fine in each case (§ 1202.4, subd. (b)), a corresponding $300 parole revocation fine in each case (suspended unless parole is revoked) (§ 1202.45), a $120 court operations assessment (§ 1465.8, subd. (a)(1)), and a $90 criminal conviction assessment (Gov. Code, § 70373).  The court noted it was imposing the minimum fines and fees, and defendant would have time to earn the amounts owed while in prison.  The court awarded 649 days of custody credit (565 actual days and 84 conduct days) in case No. 4351 and zero days of custody credit in case No. 5075.

In selecting the middle term, the trial court noted that defendant had not stipulated to any aggravating factors, nor had a trier of fact found any to be true beyond a reasonable doubt.  The court found the factors laid out in section 1170, subdivision (b)(6), did not apply.  On balance, the circumstances in aggravation did not outweigh the circumstances in mitigation.

The trial court declined to strike any of the enhancements under section 1385, subdivision (c).  Although there were multiple enhancements alleged, there were two separate victims of "unprovoked stabbing," and defendant's criminal history reflected "a significant pattern of serious criminality which would endanger the public."

Defendant timely appealed.

9

I

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief. Defendant himself filed a supplemental brief; appellate counsel and the People responded to our request for supplemental briefing.

In appellate counsel's supplemental brief, defendant argues that the trial court erred in admitting evidence of A.L.'s statement while he was in the ambulance describing the attacker. According to defendant, the statement was not spontaneous because there was insufficient evidence that A.L. made the statement while under the stress of nervous excitement induced by the stabbing. Defendant argues the record is unclear as to how much time elapsed between the stabbing and the questioning of A.L. in the ambulance. In addition, A.L. only gave the statement in response to questions from Sergeant Durfee, and A.L. seemed "pretty calm" at the time and able to answer questions in a calm, rational manner. We find no merit to defendant's contentions.

A.    *Legal Background*

Hearsay evidence, "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated," is inadmissible unless an exception applies. (Evid. Code, § 1200, subds. (a) & (b).) One such exception exists for "[s]pontaneous [s]tatement[s]" that: "(a) Purport[ ] to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) W[ere] made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.)

For hearsay to be admissible under the spontaneous statement exception, " ' "(1) there must be some occurrence startling enough to produce this nervous

10

excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." [Citations.]' [Citation.] Spontaneous statements are deemed sufficiently trustworthy to be admitted into evidence because ' " 'in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief.' " ' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 809-810.) The "crucial element" in discerning whether an out-of-court statement is admissible as a spontaneous statement is the speaker's mental state. (*Id*. at p 811.) "[T]he larger picture of the prosecution's evidence, and the reasonable inferences to be drawn from it" are relevant to the speaker's mental state. (*People v. Rincon* (2005) 129 Cal.App.4th 738, 752.)

" 'Neither lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity *if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance*.' " (*People v. Poggi* (1988) 45 Cal.3d 306, 319.) "Under the same reasoning, the fact that the declarant has become calm enough to speak coherently also is not inconsistent with spontaneity." (*Ibid.*; cf. *People v Francis* (1982) 129 Cal.App.3d 241, 254 [no abuse of discretion in admitting a statement where the stabbing victim's "calm manner" was due to stress and shock and "d[id] not necessarily indicate a lack of spontaneity"] with *People v. Lucas* (2014) 60 Cal.4th 153, 269-270 [no abuse of discretion in excluding statement identifying handwriting in a photo where the declarant was calm throughout the police interview and her demeanor did not change when shown the photo], disapproved on another ground by *People v. Romero and Self* (2015) 62 Cal.4th 1, 53-54, fn. 19.)

11

"Whether an out-of-court statement meets the statutory requirements for admission as a spontaneous statement is generally a question of fact for the trial court, the determination of which involves an exercise of the court's discretion. [Citation.] We will uphold the trial court's determination of facts when they are supported by substantial evidence and review for abuse of discretion its decision to admit evidence under the spontaneous statement exception." (*People v. Merriman* (2014) 60 Cal.4th 1, 65.) "[W]e will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.)

B.      *Analysis*

As defendant acknowledges in his supplemental brief, being repeatedly stabbed and seriously wounded is unquestionably startling enough to produce nervous excitement, and A.L.'s statement is clearly related to that event. As such, at issue is whether the circumstances indicate A.L. made his statement while under the stress of nervous excitement induced by the stabbing.

Despite defendant's contentions, substantial evidence supports the trial court's finding that A.L.'s statement was spontaneous rather than contrived. Officer Gist testified that A.L. spoke to Sergeant Durfee just after the paramedics arrived and used a gurney to take him to the ambulance, supporting the trial court's finding that A.L. made his statement soon after the stabbing. The video recording may show A.L. as calm while answering Sergeant Durfee's brief and limited questions about the attacker. But, as a result of his multiple stab wounds, A.L. suffered a collapsed lung, required surgery, and lost about a third of his total blood volume. The severity of A.L.'s injuries suggest he was talking under circumstances of physical and emotional stress and shock, rather than reflection. (*People v. Poggi, supra*, 45 Cal.3d at p. 319 [a declarant speaking calmly and coherently "is not inconsistent with spontaneity"].) Under the circumstances, we find no

12

abuse of discretion in the trial court's decision to admit A.L.'s statement in the ambulance as a spontaneous statement.

II

Defendant himself filed a supplemental brief arguing the trial court erred in denying him the right to cross-examine A.L., who did not testify at trial. According to defendant, his trial counsel said A.L. "had previous mental health issues which would have been used to show he wasn't credible." Defendant speculates that A.L. "would have probably admitted to a case of mistaken identity." As such, argues defendant, the trial court violated his Sixth Amendment rights when it precluded him from cross-examining A.L. To the extent defendant is arguing the trial court violated his Sixth Amendment rights by admitting A.L.'s statement because it was testimonial and he had no opportunity to cross-examine A.L., we disagree.

A. *Legal Background*

Notwithstanding traditional exceptions to the hearsay rule, the Sixth Amendment grants each criminal defendant " 'the right . . . to be confronted with the witnesses against him.' The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." (*Giles v. California* (2008) 554 U.S. 353, 357-358; see also *Crawford v. Washington, supra*, 541 U.S. at pp. 53-54 [accord].)

A statement is "testimonial" under this standard if (1) it was " 'made with some degree of formality or solemnity,' " and (2) "the primary purpose of the statement must 'pertain[ ] in some fashion to a criminal prosecution.' " (*People v. Leon* (2015) 61 Cal.4th 569, 603.) Although in general a statement made to a police officer during an interrogation is testimonial, it is non-testimonial where the " ' "primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." ' " (*People*

13

*v. Hall* (2024) 107 Cal.App.5th 222, 236.)  This is because the " 'declarant's purpose is not to provide a solemn declaration for use at trial, but to bring an end to an ongoing threat.' "  (*Ibid.*)

An appellate court independently reviews whether a statement is testimonial and therefore implicates the constitutional right of confrontation.  (*People v. Hall, supra*, 107 Cal.App.5th at p. 237.)  We consider the " 'primary purpose for which the statement was given and taken under an objective standard, "considering all the circumstances that might reasonably bear on the intent of the participants in the conversation." ' "  (*Ibid.*)

B.    *Analysis*

As previously discussed, Sergeant Durfee spoke with A.L. in the ambulance soon after A.L. was stabbed.  The attacker was gone, and it was possible he or she would attack again.  Given the ongoing danger to the public, it is reasonable to infer that Sergeant Durfee's primary purpose was to seek A.L.'s help in identifying the attacker so responding officers could find and detain the suspect before he or she could hurt someone else.  This conclusion is bolstered by the fact that Sergeant Durfee only asked about the attacker's race, hairstyle, and clothing.  A.L., who was suffering from multiple stab wounds, only responded with this limited identifying information, indicating his primary purpose was to help responding officers locate the attacker.  Under the circumstances, we find no error.

III

In appellate counsel's supplemental brief, defendant argues that the trial court erred in admitting evidence regarding Officer DiStefano's interviews of defendant in the patrol car and at the police station on September 4, 2022.  Defendant argues it was clear that he was subject to custodial interrogation during both interactions with Officer DiStefano.  However, he contends the evidence is insufficient to establish that Officer DiStefano properly advised defendant of his *Miranda* rights.  Despite Officer DiStefano's testimony that he read defendant his rights pursuant to a department-issued card,

14

defendant argues there was no evidence of "what [Officer] DiStefano actually said to defendant," especially since that card was never offered into evidence.

The People note that defendant never argued in the trial court that there was insufficient evidence to show that Officer DiStefano properly advised defendant of his *Miranda* rights before transporting him to the police station. Instead, defendant argued that the video of his interview at the police station should be suppressed because he had not been properly advised of his rights "a second time." Failing to assert a timely and specific *Miranda* claim forfeits the issue on appeal. (*People v. Holt* (1997) 15 Cal.4th 619, 667.) As such, we will only consider whether the trial court erred in admitting the video of his interview at the police station.

A.      *Legal Background*

Pursuant to *Miranda*, a suspect who is subjected to custodial interrogation must be informed of his rights to remain silent and the presence of an attorney. (*Miranda, supra*, 384 U.S. at p. 471.) If a suspect invokes his right to silence, the interrogation must cease. (*Id.* at pp. 473-474.) If a suspect invokes his right to counsel, all further interrogation must cease until an attorney is present. (*Id.* at p. 474.) A defendant must clearly invoke his rights under *Miranda*. (*People v. Tom* (2014) 59 Cal.4th 1210, 1225.)

"After a valid *Miranda* waiver, readvisement prior to continued custodial interrogation is unnecessary 'so long as a proper warning has been given, and "the subsequent interrogation is 'reasonably contemporaneous' with the prior knowing and intelligent waiver." [Citations.]' [Citation.] The necessity for readvisement depends upon various circumstances, including the amount of time that has elapsed since the first waiver, changes in the identity of the interrogating officer and the location of the interrogation, any reminder of the prior advisement, the defendant's experience with the criminal justice system, and '[other] indicia that the defendant subjectively underst[ood] and waive[d] his rights.' " (*People v. Williams* (2010) 49 Cal.4th 405, 434.)

B.    *Analysis*

Here, the officers were not required to readvise defendant at the police station because the second interrogation was reasonably contemporaneous with the first.  It occurred only about an hour after Officer DiStefano arrested defendant and read him his rights, and Officer DiStefano asked defendant if he remembered their conversation about his rights.  We further note that defendant had prior experience with the criminal justice system and showed no reluctance to being interviewed at the police station.  Under the circumstances, we find no error.

## IV

Having undertaken an examination of the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.


_____\s\_____
                                    Krause, J.

We concur:


_____\s\_____
Earl, P. J.


_____\s\_____
Hull, J.

16